STATE OF MONTANA ex rel. ROBERT KENNERLY and HELEN KENNERLY, his wife, Petitioners, v. DISTRICT COURT of the NINTH JUDICIAL DISTRICT of the STATE OF MONTANA, in and for the COUNTY OF GLACIER and the HON. R. D. McPHILLIPS, Judge thereof, Respondents.

No. 11786.
Decided March 2, 1970.
Rehearing Denied March 26, 1970.
466 P.2d 85.

Barney Reagan, argued, Cut Bank, Marvin J. Sonosky, argued, Washington, D. C., Keith Burrows, Asst. U. S. Atty., Billings, argued, James B. Patten, Asst. U. S. Atty., argued, amici curiae, Butte, for petitioners.

Robert L. Woodahl, Atty. Gen., Helena, Charles C. Lovell, Asst. Atty. Gen., argued, Great Falls, Robert P. Gannon, Asst. Atty. Gen., argued, Helena, Dirk Larsen, argued, Great Falls, George R. Crotty, Jr., argued, Great Falls, amicus curiae, for respondents.

490

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Petitioners herein, acting through the Montana Legal Services Association, petition this Court for a writ of supervisory control, a writ of review or such other relief as would reverse the action of the district court of the Ninth Judicial District in denying petitioners' motion to dismiss a complaint filed against them in that court.

On November 20, 1969, this Court issued the following Order:

"PER CURIAM:

"Petitioners here seek an appropriate writ to require the respondent district court to reverse its action in denying petitioners' motion to dismiss an action entitled Interstate Counseling Service, a Montana corporation, Plaintiff, vs. Robert Kennerly & Helen Kennerly, husband and wife, Defendants, pending in the district court of Glacier County, Montana, wherein plaintiff seeks payment for groceries admittedly purchased by defendants and not paid for, on the ground that the district court lacks jurisdiction over the defendants and the subject matter of the controversy. Petitioners assert they have no other plain, speedy or adequate remedy available to them and request this Court to assume original jurisdiction of this cause.

"Following ex parte presentation of the petition by counsel it appears to the Court that there is a divergence of view in the field of jurisdiction over Indians who are enrolled members of Indian tribes, residing on a reservation, contracting with non-Indians within the exterior boundaries of such reservation, as to whether the tribal court, state district court or the federal district courts are the proper forum for the determination of the rights of the parties involved.

"Before any further proceedings are had in this Court or any determination or assumption of jurisdiction in this cause the Court desires to be fully advised as to all facets involved,

and since the argument being made would have far reaching consequences if accepted by this Court, as to all contracts, divorces, child custody and the like,

"IT IS ORDERED that the Attorney General of Montana, Honorable Robert L. Woodahl, be entered as a respondent in this cause;

"IT IS FURTHER ORDERED that copy of this order and the petition, exhibits and brief be served upon the respondent court and the Attorney General within five days.

"IT IS FURTHER ORDERED that copy of this order and the petition, exhibits and brief be forwarded by certified mail to the United States District Attorney for the District of Montana, and the Court would appreciate appearance by brief and in oral argument by that office in this cause.

"IT IS FURTHER ORDERED that counsel for petitioners, respondent court and Attorney General be and appear before this Court at the hour of 10:30 o'clock a.m. on the 12th day of December, 1969, in oral argument for or against the relief sought by petitioners.

"The Court requests that all briefs may be typewritten and be filed with the Clerk on or before December 10, 1969.

"Counsel for petitioners shall make service of all papers as hereinbefore ordered."

Permission to appear was granted to the Attorney General of the State of Montana; the United States Attorney for the District of Montana; George Robert Crotty, Jr., Great Falls; Dirk H. Larsen, Great Falls; and Marvin J. Sonosky, Washington, D.C., representing the Sioux and Assiniboine Tribes; the Blackfeet Tribe did not appear. All the above counsel appeared and argued the matter before this Court. To each we extended our thanks for the thorough briefs submitted.

In our order, quoted above, we noted our concern as to whether or not this Court should assume jurisdiction of this matter and, if so, the extent of that jurisdiction. After briefs

and argument, we find the case narrowed to one issue upon which we accept jurisdiction.

That issue is: Do the courts of Montana, and in particular the district court of the Ninth Judicial District, have jurisdiction to adjudicate controversies arising from legal obligations between members of the Blackfeet Tribe and non-Indians, entered into on privately owned patented land located within the town limits of Browning, a town incorporated under the laws of Montana but located within the exterior boundaries of the Blackfeet Reservation?

Certain facts appeared by affidavits and others were stipulated to at the time of argument. They are:

1. The petitioners are enrolled members of the Blackfeet Tribe. Petitioner Robert Kennerly is an employee of the City of Browning, a municipality operating under the laws of Montana, and as such employee is entitled to the various benefits of such employment, viz: industrial accident compensation, unemployment compensation, health insurance, and public employees' retirement benefits.

2. Buttrey Food Stores, licensed by the State of Montana, extended certain credit for food to the petitioners during the months of July and August, 1964, in the amount of $214.73. This food, long ago consumed, has never been paid for and the admitted obligation to Buttrey Food Stores was turned over to a credit service for collection.

3. Suit was filed in Cascade County but removed by petitioners' motion for a change of venue to the Ninth Judicial District, in and for the county of Glacier, the county of residence of the petitioners and the county in which the debt was incurred.

4. At the same time the motion for change of venue was filed, the petitioners filed a motion to dismiss asserting a lack of jurisdiction of the state court. The district court of the Ninth Judicial District denied petitioners' motion to dismiss.

5. There exists a Blackfeet Tribal Business Council for the

Blackfeet Indian Reservation, which operates under the Blackfeet Tribal Law and Order Code, which code was adopted by the Blackfeet Tribal Court on November 20, 1967. The tribal court operated for many years prior to the adoption of the 1967 code. Non-Indian litigants have instituted legal proceedings against Indian citizens in said tribal court.

6. Chapter 2, Civil Action, Section 1, of said Blackfeet Tribal Law and Order Code reads as follows:

"The Tribal Court and the State shall have concurrent and not exclusive jurisdiction of all suits wherein the defendant is a member of the Tribe which is brought before the Courts. No judgment shall be given on any suit until the defendant has been given ample opportunity to appear in Court in his defense. * * * In all civil suits the complainant may be required to deposit with the Clerk of Court a fee or other security in a reasonable amount to cover the costs and disbursements in the case."

7. That the Blackfeet Tribe of Indians is a federal chartered corporation created under the authority of the Wheeler-Howard Act, 25 U.S.C.A. §§ 461-479.

The jurisdiction problem arising from civil and criminal legal relationships between Indians and non-Indians has been before the courts of this state since statehood. With some 25,000 Indian citizens living on or near one of some seven reservations in the state, it is understandable that the problem is not new however, because of the duality of the Indian's legal status each case must be considered in light of both state and federal relationships.

Indians resident in Montana, whether they be full blood or partial blood, allotted or unallotted, domiciled on the reservation or off of it, of one tribe or another, or whatever their status, are citizens of the State of Montana. They are entitled to the protection of our laws and are responsible to our laws. They are entitled to register to vote and do so. They are entitled to hold public office. They vote in goodly

numbers for the office of judge of the district court and for justices of this Court. Now we are told that an Indian citizen, Kennerly, who buys groceries on credit from a store in the city of Browning situated on fee land, is not subject to the jurisdiction of the state court, the judge and clerk of which he was entitled to elect.

The state cannot disenfranchise an Indian person nor can that Indian person disenfranchise the state simply by being an Indian person or by living within the external boundaries of an Indian reservation. Thus, our courts are open to Indian persons. They use the courts of this state for many things— divorces, contracts, torts, inheritance, and the entire spectrum of legal matters. Clearly, they are entitled to so do. See Bonnet v. Seekins, 126 Mont. 24, 243 P.2d 317.

In the instant case, Kennerlys, after being served with a summons and copy of the complaint did what they were entitled to do, they appeared through counsel in Cascade County and requested a change of venue to their county of residence, Glacier County. Under Rule 4, subd. B(2), M.R.Civ.P., our courts acquire jurisdiction by a voluntary appearance in an action. Once jurisdiction is had, the jurisdiction continues. Clearly jurisdiction is had over the persons of Kennerlys.

Now as to the subject matter. It is clear that a debt for a grocery bill is a personal matter and has no significance to Indian Tribal matters. Petitioners argue they are members of the Blackfeet Tribe residing on the Blackfeet Reservation and the debt arose out of a sale "in Indian country" as defined by Title 18, U.S.C. § 1151, therefore only the tribal court has jurisdiction and the state courts have none.

Section 1151 in part provides that "Indian country" means "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent * * *". Section 1151 relates to the criminal code. This section has been changed as

it concerns five states (Act of August 15, 1953, Ch. 505, 67 Stat. 588, codified in 18 U.S.C. § 1162, as to the criminal portion; and 28 U.S.C. § 1360, as to the civil portion), wherein Congress vested in the five listed states both civil and criminal jurisdiction over Indians in "areas of Indian country". Montana was not one of the states given that jurisdiction.

After the passage of Public Law 280, 83rd Congress, 1st Session, on August 15, 1953, a number of states, Montana included, recognized that certain tribes might desire enabling legislation to receive state civil and criminal protection. The legislature of this state in 1963 enacted Chapter 81, Laws of 1963 (sections 83-801—83-806, R.C.M.1947), assuming criminal jurisdiction in the Flathead Indian country.

The 1953 Act has since been amended by the Civil Rights Act dated April 11, 1968, 82 Stat. 78, Title IV, §§ 401-406, 25 U.S.C. §§ 1321-1326. The change of import is:

"State jurisdiction * * * with respect to criminal offenses or civil causes of action, or with respect to both, shall be applicable in Indian country only where the enrolled Indians within the affected area of such Indian country accept such jurisdiction by a majority vote * * *." 25 U.S.C. § 1326.

This 1968 Act does not distinguish between the territorial scope of criminal and civil jurisdiction. Both jurisdictions apply to "Indian country". We assume for our purposes here that the town of Browning is in "Indian country" regardless of whether it is on trust or fee land. Alexander Bird in the Ground v. District Court, D.C., 239 F.Supp. 981 (1965); State ex rel. Bokas v. District Court, 128 Mont. 37, 270 P.2d 396; State ex rel. Irvine v. District Court, 125 Mont. 398, 239 P.2d 272; State v. Pepion, 125 Mont. 13, 230 P.2d 961.

Recognition of this jurisdictional fact, however, does not in itself remove this cause to tribal jurisdiction for here our constitution and enabling act and that of the Blackfeet Tribe must be considered.

This Court in a 1952 case, Bonnet v. Seekins, 126 Mont. 24,

496

243 P.2d 317, ruled that a member of the Blackfeet Tribe could sue or be sued in state courts. This was an action by an Indian regarding a rental sum due from a non-Indian who had leased the Indian's allotment land. This Court said:

"It has, furthermore, been almost uniformly held that Indians may sue or be sued in state courts, since the latter are generally open to all persons irrespective of race, color, or citizenship.' * * * Our Constitution, Article III, sec. 6, commands that, 'Courts of justice shall be open to every person'. Certainly Indians are persons and as such are entitled to maintain actions to redress wrongs." Citing Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719; Bem-Way-Bin-Ness v. Eshelby, 87 Minn. 108, 91 N.W. 291; 27 Am.Jur., Indians, p. 554, § 21; 42 C.J.S. Indians p. 652, § 8.

Recognizing the rights of Indian citizens to avail themselves of the state courts, we are faced with the impact and application of the case of Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251, a cause of action by a non-Indian against an Indian where the action arose on a reservation. In that case the plaintiff was a licensed trader on the Navajo reservation, plaintiff filed a writ of attachment and levied upon sheep owned by the defendant (a Navajo) located on the reservation. The United States Supreme Court held that Arizona had no jurisdiction over a civil action brought by a non-Indian against an Indian for merchandise sold on the Navajo reservation. However, Williams, supra, when fully considered, is not authority for petitioners' position. In Williams an attempt was made to levy on livestock on the reservation and though the court did not set forth the facts as to the ownership of the sheep or whether or not the government had made loans to the Indian owner, it is common knowledge that livestock on an Indian reservation stand in a peculiar status due to the government's policy of trying to make Indian citizens self-sufficient via livestock loans. Here we have no

such facts. As heretofore stated, a debt for groceries is a personal thing and not connected to Indian tribal rights.

It is of import to note that in Williams, supra, the Supreme Court of the United States indicated that "absolute" federal jurisdiction is not invariably exclusive jurisdiction but that the question of applicability of state law depends upon "whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251, 254; see also Draper v. United States, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419.

With these considerations we arrrive at what we find to be the crux of this particular case. Considering that the Blackfeet Tribe is a federal chartered corporation, created by the Wheeler-Howard Act, 25 U.S.C.A. § 476, and operating as such adopted the Blackfeet Tribal Law and Order Code (adopted Nov. 20, 1967), wherein the state was given concurrent jurisdiction, does the giving of this jurisdiction and allowing this particular cause of action to be filed in the state courts "infringe[d] on the right of reservation Indians to make their own laws and be ruled by them" as emphasized in Williams? We think not! Indian tribes have the power absent some treaty provision or act of Congress to the contrary, to enact their own laws for the government of their people and to recognize and establish courts to enforce them. Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965); Iron Crow v. Oglala Sioux Tribe of Pine Ridge Reservation, S.D., 231 F.2d 89 (8th Cir. 1956). The adoption by a tribe of a law and order code constitutes the code as their tribal law. Oliver v. Udall, 113 U.S.App.D.C. 212, 306 F.2d 819 (1962).

It appearing that a justiciable issue is present, and that state jurisdiction exists in relation to the action, we remand the action to the district court for further action.

The district court was correct in denying the motion to dismiss.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL, and BONNER, concur.