No. 12167

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

In the Matter of:
LELAND (LEO) BLACKWOLF, ELMER BRADY, JR.,
RAYMOND SEMINOLE,

                    Petitioners,

        -vs-

DISTRICT COURT OF THE SIXTEENTH JUDICIAL
DISTRICT of the State of Montana, in and
for the County of Rosebud and the HONORABLE
ALFRED B. COATE, JUDGE,

                    Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

    For Petitioners:

        Barney Reagan argued, Helena, Montana.
        Thomas J. Lynaugh argued, Helena, Montana.
        William Jensen and Thomas Ashton, Helena, Montana.

    For Respondents:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana.
        David V. Gliko, Assistant Attorney General, argued,
        Helena, Montana.
        Otis L. Packwood, Billings, Montana.
        William F. Meisburger, County Attorney, Forsyth,
        Montana.

---

                        Submitted:  January 24, 1972

                        Decided: FEB 23 1972

Filed: FEB 23 1972

                _Thomas J. Kearney_
                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This matter is before the Court as an original proceeding. Petitioners, enrolled members of the Northern Cheyenne Indian Tribe in Rosebud County, seek a writ of supervisory control, writ of review, writ of prohibition or other appropriate relief from the action of the juvenile court of the sixteenth judicial district, county of Rosebud.

Petitioners are charged in the juvenile court of the sixteenth judicial district in three separate actions as delinquent minors for alleged acts of delinquency which occurred within the exterior boundaries of the Northern Cheyenne Indian Reservation.

The charges were preceded by three separate juvenile hearings before the Northern Cheyenne Tribal Court. It is agreed that the Tribal Court has jurisdiction. The Tribal Court, in turn, "remanded" the proceedings to respondent state court under the authority of the "Revised Law and Order Code of the Northern Cheyenne Reservation, Chapter IV, Section 4, Juvenile Delinquency, Paragraph 9(4)", which authorizes in pertinent part:

> "9. Hearing-Judgment: The court may conduct the hearing in an informal manner and may adjourn the hearing from time to time. In the hearing of any juvenile case the general public may be excluded and only such persons admitted as may have a direct interest in the case. If the court shall find that the child is delinquent within the provision of this ordinance, it may, by order duly entered, proceed as follows:
>
>> "(1) Place the child on probation for supervision upon such terms as the court shall determine.
>>
>> "(2) Admit the child to a suitable public or private agency or institution or take temporary custody and authorize his placement in a suitable foster home.

"(3)  Order such further care and treatment as the court may deem necessary for the best interests of the child.

"(4)  Order the child delivered into the appropriate juvenile department of the District Court for such disposition as it may make through use of the facilities and institutions provided by the State of Montana in the interests of the child and of the Tribe and of the State, provided that, upon the assumption of jurisdiction by the Juvenile Court of the Judicial District by means of this section, the jurisdiction of the Tribal Court shall end." (Emphasis added).

In response to petitions filed by the county attorney of Rosebud County alleging the juveniles to be delinquents, the state juvenile court exercised its jurisdiction by issuance of citations.  All petitioners and their parents were served with process within the exterior boundaries of the Northern Cheyenne Indian Reservation.

Petitioners moved the respondent juvenile court to dismiss the Rosebud county attorney's three petitions for lack of jurisdiction.  On October 21, 1971, the juvenile court denied the motion.  The pertinent conclusions of law in the order denying the motion are:

"V.  That jurisdiction over Indian juveniles for their acts within the reservation is exclusively with the tribe. * * *

"VI.  * * * The only juvenile jurisciction attempted to be exercised by this Court, is that which has been delegated to the Court by the Tribe. * * *"

Such order is not an appealable order, thus this petition was filed in this Court as an original proceeding seeking an appropriate writ to reverse the action of the juvenile court.

This Court accepted jurisdiction and oral arguments were had on January 13, 1972.

- 3 -

At this point we emphasize that all matters concerning the exercise of jurisdiction by state courts over enrolled Indian citizens who reside within the exterior boundaries of an Indian reservation are <u>controlled solely by federal law</u>, as to acts or transactions within the exterior boundaries of the reservation.

On the day set for oral argument in this Court, the United States government requested a period of ten days in which to determine whether or not an amicus curiae brief on behalf of the federal government by the Solicitor General would be filed. The extension was granted. The time period expired; no brief was filed and no further extension of time was requested. Therefore, the cause was submitted to this Court for determination on January 27, 1972.

Petitioners contend the juvenile court of the sixteenth judicial district is without jurisdiction. Further, that the Northern Cheyenne Tribe cannot confer jurisdiction nor can the juvenile court accept jurisdiction from the Tribe, since procedural rules and legislative action, both as to the state and the Tribe, have not been followed in order for the state of Montana to have concurrent jurisdiction over criminal and civil offenses arising in Indian country.

Petitioners point out that the Northern Cheyenne Reservation does not come within the Montana code sections which accepted another tribe who had properly applied to the state of Montana to share reservation jurisdiction. Sections 83-801 through 83-806, R.C.M. 1947. Therefore, petitioners contend, Montana has not and cannot accept any jurisdiction, criminal or civil, with

the Northern Cheyenne Tribe under the procedures outlined in either Public Law 280 (Act of August 15, 1953, 67 Stat.588-590), or the Federal Indian Civil Rights Act of 1968 (Act of April 11, 1968, 82 Stat. 77, 79, 25 U.S.C. §§ 1321-26), since Montana has not acted together with the Northern Cheyenne Tribe in compliance with the requirements of these acts.

Petitioners further contend that the cases involved here are governed solely by the procedural rules contained in Title IV of the Federal Indian Civil Rights Act and its predecessor Public Law 280.

These contentions are correct and are consistent with this Court's ruling in Crow Tribe of Indians v. Deernose, _____ Mont._____, 487 P.2d 1133, 1136, 28 St. Rep. 754:

> "It is abundantly clear that state court juris-
> diction in Indian affairs on reservations does
> not exist in the absence of an express statutory
> grant of such jurisdiction by Congress together
> with strict compliance with the provisions of such
> statutory grant. Illustrative of this principle
> is the 1971 case Kennerly v. District Court, etc.,
> of Montana, 400 U.S. 423, 91 S. Ct. 480, 27 L.Ed.2d
> 507." (Emphasis added)

In Kennerly v. District Court, 400 U.S. 423, 91 S.Ct. 480, 27 L ed 2d 507, 511, the United States Supreme Court considered the question of whether a resolution passed by the Blackfeet Tribal Council in 1967, granting concurrent juris-diction to the state in all suits where the defendant was a member of the Blackfeet Tribe, was sufficient to confer juris-diction on the state. In absence of affirmative legislative action by the state of Montana accepting jurisdiction, the United States Supreme Court said:

> "The unilateral action of the Tribal Council was
> insufficient to vest Montana with jurisdiction
> over Indian country under the 1953 Act."

Regarding the vesting of jurisdiction under the provisions of the 1968 Federal Indian Civil Rights Act, the United States Supreme Court in Kennerly stated that in absence of a special election called by either the Tribal Council or the necessary number of enrolled members of the Tribe, the action by the Tribal Council did not comply with the provisions of the Act.

The state's argument as it concerns the withholding or conferring of social benefits due our Indian citizens by the state of Montana, is sound and well taken as a social principle. Yet, this argument overlooks the basic fact that this Court is totally without authority to implement legislative changes as to the federal laws that govern. Once the Indian citizens comply with the mandatory procedures enacted by Congress and approved by the United States Supreme Court, Montana can and will join in the solution of these problems.

There was clearly a transfer of jurisdiction in these cases by the Indian Tribal Court and an assumption of that jurisdiction by the state court. The state's argument which attempts to remove these cases from federal control on the facts, is without merit.

The order of the juvenile court is reversed and the three causes involved dismissed.

Associate Justice

- 6 -

We Concur:

_[signature: James T. Harrison]_

Chief Justice

_[signature: John Conway Harrison]_

_[signature: Frank I. Haswell]_

_[signature: Wesley Castles]_

Associate Justices.

- 7 -