No. 12325

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

THE SECURITY STATE BANK,
a corporation,

                        Plaintiff and Respondent,

-vs-

ISAAC RICHARD PIERRE, same as
RICHARD PIERRE,

                        Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
           Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

    For Appellant:

        Richard A. Baenen argued, Washington, D. C.
        Victor F. Valgenti appeared, Missoula, Montana.

    For Respondent:

        F. N. Hamman, Polson, Montana.
        Christiansen, McCurdy, Ingraham and Wold, Polson,
        Montana.
        F. L. Ingraham argued, Polson, Montana.

    Amicus Curiae

    Jean A. Turnage argued, Polson, Montana.
    Sam E. Haddon argued, Missoula, Montana.

---

                    Submitted: May 31, 1973

                    Decided: JUN 2 0 1973

Filed: JUN 2 0 1973

_Thomas J. Kearney_
                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the district court of the fourth judicial district, county of Lake, Hon. E. Gardner Brownlee, judge presiding, granting default judgment against an enrolled Indian. The cause was originally heard in this Court in December 1972, and an opinion issued in February 1973, which was recalled and the cause was reheard on May 31, 1973.

The sole issue on appeal is whether the state courts of Montana have jurisdiction over a civil dispute involving a commercial transaction entered into on the Flathead Reservation between an enrolled member of the Confederated Salish and Kootenai Tribes residing on the reservation and a nonmember.

The relevant facts are not in dispute and were stipulated to at a hearing before the trial court. Judge Brownlee for hearing purposes joined this case and the case of Ronan State Bank v. Jewett, due to the fact the same jurisdiction question was involved.

In view of the complexity of jurisdiction questions involving Indian reservations and the number of cases that this Court is receiving, we will detail the stipulated facts with the thought that somewhere in the federal appellate process the final authority will be able to more clearly understand the perplexity of state jurisdictional problems and the near impossibility of their solution due to prior federal decisional case law.

Defendant Isaac Richard Pierre is an enrolled tribal member, living within the confines of the reservation. Pierre borrowed money from plaintiff Security State Bank giving a note as evidence of the loan at Polson, Montana, located within the exterior boundaries of the Flathead Indian Reservation. Such reservation is located in four counties of the state, Missoula, Lake, Sanders and Flathead, and consists of approximately 1,250,000 acres of which 615,418 acres is trust land. The total resident membership

of the tribe is 19 percent of the total population living within the exterior boundaries of the reservation. The full blood enrollment of the tribe is 3.3 percent. Defendant Pierre possesses three quarters Indian blood. In 1924, all persons of Indian heritage were declared United States citizens. The Flathead Tribe was incorporated as a federal corporation under the Wheeler-Howard Act in 1935, the Indian Reorganization Act, 25 U.S.C. §§ 461 et seq.

Under the provisions of the federal charter the tribe is to be self-governing and one of its powers is to set up a court system. The Flathead Tribal Court has a chief judge and three associate judges who try cases and when necessary the three associate judges serve as an appellate court. These judges are not legally trained but are lay people, similar to justices of the peace. There is no appellate procedure from a decision of the three judge tribal court.

Following the original recalled opinion in the instant case, this Court decided another Indian jurisdictional matter, State ex rel. Mary Iron Bear v. District Court of the Fifteenth Judicial District, _____Mont._____, _____P.2d_____, 30 St.Rep. 482,490. In Iron Bear the Court said:

> "Before a district court can assume jurisdiction
> in any matter submitted to it, it must find subject
> matter jurisdiction by determining: (1) whether
> the federal treaties and statutes applicable have
> preempted state jurisdiction; (2) whether the exercise of state jurisdiction would interfere with
> reservation self-government; and (3) whether the
> Tribal Court is currently exercising jurisdiction
> or has exercised jurisdiction in such a manner as
> to preempt state jurisdiction."

Here, not one of the Court's required three tests is met. At the time of the filing of the instant case in the district court the Tribal Court was in existence though it had no ordinance on debt actions nor was it possible for a nonIndian to sue an Indian unless the Indian stipulated to being sued. However, that situation has now changed and limited debt actions can now be filed in Tribal Court and nonIndians can sue tribal members.

The trial court and this Court received comprehensive briefs from the parties. Defendant relies on a number of recent Montana cases: Kennerly v. District Court, 400 U.S. 423, 425, 91 S.Ct. 480, 27 L ed 2d 507; Crow Tribe v. Deernose, 158 Mont. 25, 487 P.2d 1133; Blackwolf v. District Court, 158 Mont. 523, 493 P.2d 1293; State ex rel. Iron Bear v. District Court, ____Mont.____, ____P.2d____, 30 St.Rep. 482.

Defendant argues the facts here and those in Kennerly cannot be distinguished therefore Kennerly controls and the action of the trial judge should be reversed. In Kennerly, two members of the Blackfeet Indian Tribe, residing on the Blackfeet Indian Reservation, purchased over $200 worth of food on credit from a grocery store located on the reservation and refused to pay after the goods were consumed. Suit was begun in the state district court against the Indian to collect the debt. Defendant Indians moved to dismiss the suit on the grounds the state court lacked jurisdiction due to the fact defendants were members of the Blackfeet Tribe and the transaction took place on the reservation.

The district court overruled defendants' motion and defendants applied to this Court for a writ of supervision which was granted. In its opinion, this Court upheld the action of the district court. State ex rel. Kennerly v. Dist. Court, 154 Mont. 488, 466 P.2d 85. On a writ of certiorari to the United States Supreme Court, that court overruled this Court's decision holding that the state of Montana lacked jurisdiction over the Indians of the Blackfeet Tribe because the state had never taken the necessary "affirmative legislative action" concerning either civil or criminal jurisdiction with respect to the reservation. The United States Supreme Court quoted from the Act of August 15, 1953, 67 Stat. 590, Section 7, which provides:

"The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for

- 4 -

in this Act, to assume jurisdiction at such time
and in such manner as the people of the State shall,
by affirmative legislative action, obligate and
bind the State to assumption thereof."

A result of the Kennerly decision was to dry up credit sources throughout the state to responsible Indian citizens, a void not filled by any federal source.

However, in this case, unlike Kennerly, the state has passed enabling legislation with respect to jurisdiction over Indians residing on the Flathead Reservation. Title 83, Chapter 8, sections 83-801 through 83-804, R.C.M. 1947, provides for the assumption of civil and/or criminal jurisdiction over Indians of the Flathead Tribe and the time and manner by which such jurisdiction could be assumed. The legislature conditioned assumption of jurisdiction by the state on the written consent of the tribe, as expressed by a formal resolution. A pertinent provision of section 83-802, R.C.M. 1947, reads:

"Whenever the governor of this state shall receive
from the tribal council or other governing body
of the Confederated Salish and Kootenai Indian tribes,
community, band or group of Indians in this state,
a resolution, expressing its desire that its people
and lands be subject to the criminal and/or civil
jurisdiction of the state of Montana to the extent
authorized by federal law and regulation, he shall
issue within sixty (60) days a proclamation to the
effect that such jurisdiction shall apply to those
Indians and their territory, or reservation in ac-
cordance with the provisions of this act. * * *".
(Emphasis added).

State law precludes Montana from assuming jurisdiction over Indians on the reservation not tendered by the tribes by formal resolution. In a recent case, State ex rel. McDonald v. District Court of the Fourth Judicial District, ____Mont.____, 496 P.2d 78,80, 29 St.Rep. 265, 268, we reviewed the steps taken by the Flathead Tribe in presenting a resolution to the governor on accepting state jurisdiction:

"Tribal consent to the assumption of criminal juris-
diction by the state courts of Montana over Indians
committing crimes on the Flathead Indian Reservation
was granted by the enactment of Tribal Ordinance 40-A,
dated May 16, 1964. The governor of Montana thereafter
issued the required proclamation on June 30, 1964.

Amost a year later on May 5, 1965 Tribal Ordinance 40-A (Revised) was enacted. This ordinance was similar to the original Ordinance 40-A except for clarifying language limiting its scope to <u>criminal</u> laws and repealing the original Ordinance 40-A. The governor of Montana thereafter issued another proclamation accordingly dated October 8, 1965.

"Several months later on June 22, 1966, Tribal Resolution 1973 was enacted expressly rescinding Tribal Ordinances 40-A and 40-A (Revised). There is no evidence that this Tribal Resolution was ever transmitted to or received by the governor of Montana; nor was any proclamation of the governor made in connection with this Resolution. On June 30, 1966, Tribal Resolution 1997 was enacted which expressly rescinded Tribal Resolution 1973 enacted eight days previously. Again no governor's proclamation was issued concerning Tribal Resolution 1997.

"On September 15, 1967 Tribal Resolution 2318 was enacted requesting the governor of Montana to extend the time limit for withdrawal from state jurisdiction for an additional year after October 7, 1967, and withdrawing its consent to such state jurisdiction. It further provided that this Tribal Resolution was null and void if the governor extended such time limit as requested. On October 8, 1967 the governor issued a third proclamation extending the time limit for the Tribe's withdrawal of their consent to state jurisdiction for an additional year from October 7, 1967.

"Finally, on April 30, 1971, the Tribal Council passed a motion 'to seek retrocession on State Concurrent Jurisdiction'. The record discloses no further action in conformity with this motion."

Section 83-801, R.C.M. 1947, provides:

"Criminal jurisdiction of Flathead Indian country to be assumed. The state of Montana hereby obligates and binds itself to assume, as herein provided, criminal jurisdiction over Indians and Indian territory of the Flathead Indian reservation and country within the state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st session)."

No reference is made to civil jurisdiction in the above quoted section, however, in section 83-802, R.C.M. 1947, setting up the procedure for the tribes to request state jurisdiction, this language appears:

"* * * a resolution, expressing its desire that its people and lands be subject to the criminal and/or civil jurisdiction of the state of Montana to the extent authorized by federal law and regulation * * *."

Tribal Ordinance 40-A of the Confederated Salish and Kootenai Tribes of the Flathead Reservation, passed on May 15, 1964, set

forth the extent of jurisdiction and subjects:

"(a) Compulsory School Attendance
"(b) Public Welfare
"(c) Domestic Relations (except adoptions)
"(d) Mental Health, Insanity, Care of the Inform,
    Aged and Afflicted
"(e) Juvenile Delinquency and Youth Rehabilitation
"(f) Adoption Proceedings (With consent of the
    Tribal Court)
"(g) Abandoned, Dependent, Neglected, Orphaned or
    Abused Children
"(h) Operation of Motor Vehicles Upon the Public
    Streets, Alleys, Roads and Highways
"(i) Laws of the State of Montana, and Ordinances
    and Regulations of a Criminal Nature Applicable
    within Incorporated Cities and Towns."

Less than a year later on May 5, 1965, Tribal Ordinance 40-A (Revised) was passed by the Tribal Council which specifically limited jurisdiction to criminal laws. Subsection (i) of 40-A (Revised) reads:

"(i) All Criminal Laws of the State of Montana; and all Criminal Ordinances of Cities and Towns within the Flathead Indian Reservation." (Emphasis added).

Worcester v. Georgia, 31 U.S. 515, 8 L.Ed 483 (1832), established that title to Indian country meant more than title within the ordinary proprietary concepts of our law of real property. It included all aspects of sovereign government control. These concepts--Indians being a foreign people and Indian country being a foreign land--are under present factual conditions totally inconcistent with the citizenship of Indians in the United States and the state wherein they reside. As we noted in Kennerly, Indians of this state are citizens of Montana; they are entitled to the protection of our laws and are responsible to our laws; they are entitled to vote and do so; many hold public office; they help elect the judiciary of this state; and, we might add, they have legislators in both houses of our legislature.

Plaintiff argues that the effect of Kennerly, Deernose and Blackwolf is to create among reservation Indians a special class of citizens having "rights" not afforded other citizens of the state while at the same time denying basic constitutional rights to those with whom the Indians create obligations otherwise enforceable in the courts. Further, that such anomaly founded solely

upon ethnic considerations is wholly out of step with enlightened constitutional principles, citing: Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L ed 2d 113; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L ed 2d 287; Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L ed 2d 551.

All of the cited cases consider the basic constitutional principle of equal protection of the law being afforded all citizens notwithstanding differences in race, alienage, religion, poverty, or class. We do not take issue with plaintiff's argument or the cases cited, but find we are confronted with the recent United States Supreme Court opinion in Kennerly and with what we believe to be, at least now, the erroneous concept set down in Worcester that the tribes were nations with whom treaties had to be made. Until that concept is changed, there is little state courts can do to afford the equal protection of our law to both its Indian and nonIndian citizens on civil matters arising within the exterior boundaries of an Indian reservation.

Kennerly is controlling and the state cannot exercise civil jurisdiction where it interferes with the self-government of the Flathead Tribe, or impairs a right granted, reserved or preempted by Congress. Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L ed 2d 573; Warren Trading Post v. Arizona Tax Comm., 380 U.S. 685, 85 S.Ct. 1242, 14 L ed 2d 165; Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L ed 2d 251.

The decision of the district court is reversed and its order of June 7, 1972, is ordered vacated.

John Conway Harrison
Associate Justice

- 8 -

We concur:

_____
Chief Justice

_____

_____
Associate Justices

_____
Hon. Bernard Thomas, District
Judge, sitting for Justice
Wesley Castles.