No. 80-12

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

STATE OF MONTANA, ex rel.,
SHELLEY ANN FLAMMOND,

                              Petitioners and Appellants,

        -vs-

JOSEPH L. FLAMMOND,

                              Respondent and Respondent.

---

Appeal from:  District Court of the Ninth Judicial District,
              In and for the County of Glacier, The Honorable
              R. D. McPhillips, Judge presiding.

Counsel of Record:

        For Appellant:

                Hon. Mike Greely, Attorney General, Helena, Montana
                Larry Epstein argued, Deputy County Attorney, Cut
                Bank, Montana

        For Respondent:

                Steven Bunch argued, Montana Legal Services, Helena,
                Montana
                D. Michael Eakin argued, Montana Legal Services,
                Hardin, Montana

        For Amicus Curiae:

                Michael G. Garrity, Dept. of Revenue, Helena, Montana

---

                              Submitted:  September 15, 1980

                              Decided:  DEC 19 1980

Filed:  DEC 19 1980


                Thomas J. Kearney
        _____
                              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Petitioner Shellyann Flammond appeals a ruling of the Glacier County District Court dismissing, for lack of jurisdiction, an action seeking to enforce child support payments under Montana's Uniform Reciprocal Enforcement of Support Act (URESA), Title 40, Chapter 5, MCA. Having determined that the District Court lacked both subject matter over the transaction and personal jurisdiction over the respondent, we affirm.

Lloyd Flammond is an enrolled member of the Blackfeet Tribe. Shellyann Flammond is not. They were married on March 25, 1976 in Long Beach, California, and then moved to Babb, Montana, which is located within the boundaries of the Blackfeet Reservation. On August 5, 1976, their only child, Susie Renee Flammond, was born to them. In November of the same year, the couple separated. Mother and child moved to California and established residence there. The father remained on the reservation where he still resides.

In 1977 the mother filed a petition under California's URESA seeking monthly child support payments of $320 from the father. The County of Los Angeles, from whom the mother was receiving public aid for the child, joined the petition. The California Superior Court for the County of Los Angeles found that the father owed a duty of support and ordered the petition sent to Glacier County District Court in Montana for the filing of an enforcement action under the provisions of Montana's URESA, section 40-5-101, et seq., MCA.

The Montana court issued an order for the father to show cause why he should not be required to make support payments under the Montana Act. A Glacier County Deputy Sheriff served the show cause order on the father within the

-2-

boundaries of the Blackfeet Reservation. The father moved to dismiss on grounds that the District Court lacked personal and subject matter jurisdiction and that service of process was insufficient. The District Court granted the motion. Finding, inter alia, that none of the acts of nonsupport alleged in the petition had occurred in Montana, the court concluded that it lacked subject matter jurisdiction.

Where, as here, neither the state nor the tribe has complied with the current federal enabling statutes, 25 U.S.C. §§ 1321-1326, regulating the extension of state civil and criminal jurisdiction to Indian reservations, Montana may not exercise subject matter jurisdiction over transactions arising on Indian reservations (see Blackwolf v. District Court (1972), 158 Mont. 523, 493 P.2d 1293; Kennerly v. District Court (1971), 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507), unless the transaction entails "significant" or "substantial" contacts with the state outside of reservation boundaries. Crawford v. Roy (1978), 176 Mont. 227, 557 P.2d 392, (action to recover payments for services rendered to Indian attorney both on and off the reservation where the employment contract was entered into off the reservation); Little Horn State Bank v. Stops (1976), 170 Mont. 510, 555 P.2d 211, cert.den. Stops v. Little Horn State Bank (1977), 430 U.S. 904, 97 S.Ct. 1171, 51 L.Ed.2d 580 (where Indian parties had obtained loans off the reservation but within Montana); State ex rel. Old Elk v. District Court (1976), 170 Mont. 208, 552 P.2d 1394, (where the reservation Indian was a suspect in an off-reservation shooting); Bad Horse v. Bad Horse (1974), 163 Mont. 445, 517 P.2d 893, cert.den. 419 U.S. 847, 95 S.Ct. 83, 42 L.Ed.2d 76 (where the Indian couple had been married

-3-

off the reservation); See also, Fisher v. District Court (1976), 424 U.S. 382, 389 n. 14, 96 S.Ct. 943, 47 L.Ed.2d 106; De Coteau v. District Court (1975), 420 U.S. 425, 429 n. 3, 95 S.Ct. 1082, 43 L.Ed.2d 300, reh.den. 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95. Nowhere does either Title IV of the Social Security Act, 42 U.S.C. § 601, et seq., or the regulations promulgated under it affirmatively authorize the states by means of URESA legislation to assume jurisdiction over reservation Indians who have neglected to provide support for their dependents.

Here there are absolutely no off-reservation acts in Montana sufficient to vest state courts with jurisdiction over the respondent, a reservation Indian. The only off-reservation acts occurred in California. It is well-settled that a reservation Indian's domicile on the reservation is not an in-state contact which grants jurisdiction to state courts. Fisher v. District Court (1976), supra; Kennerly v. District Court (1971), supra; Williams v. Lee (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251.

As a prerequisite to _in_ _personam_ jurisdiction, the forum state and the party over whom jurisdiction is sought must be linked by certain "minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe v. Washington (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, quoting Milliken v. Meyer (1940), 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278. Here the respondent father has injured neither persons nor property within the State of Montana. The cause of action to enforce support payments arises solely from his domestic relations. The controversy is the outgrowth of a separation that did not occur within Montana's territorial jurisdiction and that

was not otherwise connected with this state. Under essentially the same constellation of facts, the United States Supreme Court has held that a state's assertion of personal jurisdiction would be both unreasonable and impermissible. Kulko v. California Superior Court (1978), 436 U.S. 84, 96-97, 98 S.Ct. 1690, 56 L.Ed.2d 132, reh.den. 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150; See also, Rule 4(B), M.R.Civ.P. The District Court had no basis to assert personal jurisdiction over the respondent.

Contrary to the mother's contentions, Natewa v. Natewa (1972), 84 N.M. 69, 499 P.2d 691, does not support state jurisdiction in this case. There the New Mexico Supreme Court found state jurisdiction over the URESA action brought by a non-Indian Wisconsin plaintiff against her Indian husband living on the Zuni Reservation. Citing Daly v. Daly (1956), 21 N.J. 599, 123 A.2d 3, the New Mexico court stated that "all that was needed for proper jurisdiction" under URESA was "the presence of the husband or father in the responding state, the presence of the wife or child in another state, and the existence of a duty of support on the part of the father under the laws of the responding state." 499 P.2d at 693. In Natewa, the husband was clearly "present" in the responding state (New Mexico) for as the court held, he had submitted to state jurisdiction when he voluntarily appeared in lower court proceedings. 499 P.2d at 693.

In this case, however, the father has challenged state court jurisdiction from the outset. He has not acquiesced in state jurisdiction so as to give the Montana court in personam jurisdiction over him. He cannot be said to be "present" within the responding state, for the reservation is clearly beyond the territorial jurisdiction of the

Montana courts.  See, Kennerly v. District Court, supra.

Similarly, there exists no duty to support on the part of the father in Montana.  For, as we have determined, the Montana courts do not have subject matter jurisdiction over the transaction in question.

It is not our purpose here to deny Ms. Flammond a forum.  We have no choice but to apply the law as it has been declared by the United States Supreme Court.  In his brief and at oral argument, respondent vigorously contended that the tribal court would provide a fair and viable forum for the judicial enforcement of child support obligations. In recent years, American Indian tribes have strived to become independent and responsible government entities. There is every reason to hope, therefore, that the Blackfeet Tribe will afford the petitioning wife a viable remedy in its courts.  Should tribal governments prove uncooperative or should their courts discriminate against non-Indian plaintiffs, they run the risk of eventual Congressional legislation that could deprive them of much of the autonomy they have struggled so long to achieve.

It appears that there is no appeal from a tribal court ruling to the federal court system.  See Wells v. Philbrick (1980), 486 F.Supp. 807, 809 and n. 2; (1980), 25 U.S.C. § 1303.  However, that is not an argument in favor of state court jurisdiction.  A state may simply not extend its jurisdiction by judicial fiat no matter how compelling the policy considerations for doing so may seem if there is no legal basis to support state jurisdiction.  If a remedy other than tribal court is to exist, Congress must provide it.

The judgment of the District Court is affirmed.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____


_____
        Justices

-7-

Mr. Justice John Conway Harrison dissenting:

I respectfully dissent.

The majority has found that this state's courts cannot exercise jurisdiction over Mr. Flammond because he has insufficient contacts with the State of Montana. For the purposes of the URESA, he is a citizen only of the Black-feet reservation. I believe that in rendering such a decision, my colleagues have continued on a course that leads even further away from the establishment of a common-sense rule of law in Indian jurisdiction cases.

This Court early recognized that there existed an inherent fairness in a rule that ". . .'Indians may sue or be sued in state courts, since the latter are generally open to all persons irrespective of race, color, or citizenship.'" Bonnet v. Seekins (1952), 126 Mont. 24, 26, 243 P.2d 317, 318, citing 27 Am.Jur. Indians, §21 at 554. (Emphasis supplied.) Is it no longer the policy of this Court to strive to interpret the law in a fair and just manner without regard to the color of a person's skin?

I am mindful that the majority is in keeping with the trend of case law in this area, but I cannot in good conscience support a legal trend which operates upon the inequitable and unfair premise that some citizens can be citizens for the purposes of state benefits, yet escape responsibility by the denial of that citizenship when a judgment to support his children may be rendered against him. It is my view this opinion serves only to perpetuate and expand an already unworkable legal framework.

When Congress made Indians citizens of the United States, it also made them citizens of the states in which they lived. "An Indian, becoming a citizen of the United

States and residing in a state, is held to be a citizen of that state." Confederated Salish and Kootenai Tribes, Mont. v. Moe (D.C. Mont. 1975), 392 F.Supp. 1297 1319, n. 5 (Judge Smith, dissenting), citing Boyd v. Nebraska (1892), 143 U.S. 135-162, 12 S.Ct. 375, 36 L.Ed. 103. It is clear that this is no longer precisely true.

As to the benefits of state citizenship, Indians are entitled to the full measure of state services, but as to the burdens of state citizenship, the reservation Blackfeet Indians are citizens not answerable in our courts. Such a double standard is an affront to common-sense policies of fairness and equal treatment under the law. How can the Blackfeet people so heartily embrace Montana citizenship when educating their children, seeking state public assistance, voting, and using state roads on the reservation, yet use their status as on-reservation Indians as a shield against their social and legal obligations, without infringing on the equal protection rights of non-Indian Montana citizens? I would submit that they cannot.

We are faced with a choice of inferences in this case. We can infer that Congress intended to make Joseph Lloyd Flammond a full and complete citizen of this state, or that it did not. If it bestowed upon him all the rights and privileges of Montana citizenship, then it must have intended that he be fully as answerable in state courts as any other Montana citizen. To infer otherwise would be to abandon the position that the Congress no longer seeks to equalize the benefits and burdens of government.

My colleagues have concluded that Mr. Flammond has insufficient contacts with the state for it to exercise

jurisdiction over him. Mr. Flammond travels on state roads when he is on the reservation. He is entitled to vote for persons who will conduct state affairs. He is entitled to educate his children in public schools. He is entitled to bring his claims and litigate them in state courts. He is entitled to receive any public assistance for which he qualifies. On appeal, Joseph Lloyd Flammond was represented by Montana Legal Services attorneys, not tribal attorneys. Yet, when all this is considered, the majority concludes that Mr. Flammond has insufficient contacts with the State of Montana for state courts to entertain an action against him. In my opinion, Mr. Flammond is a Montanan and answerable to the state court like all other Montanans who enjoy these privileges.

The majority asserts that Kulko v. California Superior Court (1978), 436 U.S. 84, 96-97, 98 S.Ct. 1690, 56 L.Ed.2d 132, reh. denied, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150, has essentially the same set of facts as in this case and stands for the proposition that a state's exercise of personal jurisdiction would be both unreasonable and impermissible. I interpret the facts in Kulko to be completely dissimilar to the facts in this case. In Kulko the husband had virtually no contacts with the State of California. He lived in New York and his wife, who brought the action, lived in California. California attempted to exercise personal jurisdiction over Mr. Kulko, but the United States Supreme Court ruled that California did not have jurisdiction, and it would be unreasonable to compel his appearance. This was not a URESA action, and the suit was not brought in the state of the responding spouse. Compare this to the situation before us. The suit was a URESA petition designed

for the convenience of the responding spouse and brought within a few miles of Mr. Flammond's home. Is this more "unreasonable" than compelling his appearance in California, which he admits the State of California could do? I conclude that the State of Montana's exercise of personal jurisdiction would not only be permissible, but reasonable and proper, and in keeping with the spirit of URESA.

I am not concerned here with tribes, but with individuals. There is something fundamental in the concepts of fairness and equality that someone able to sue in a court should be amenable to suit. What we are saying is that Mrs. Flammond, a California citizen, cannot bring her action in state court solely because her husband is now an on-reservation Blackfoot Indian. Are we not denying her equal protection of the law under the Fifth and Fourteenth Amendments?

It should be further noted that our decision today does not just transfer Mrs. Flammond's case to tribal court, but in a practical sense, may leave her without any remedy. The Blackfeet Code has not adopted any reciprocal provision which would create a mechanism by which they may process a URESA petition. Therefore, although the tribe has undisputed jurisdiction, it may be unable to proceed with the petition because of the absence of any reciprocal relationship with California. Assuming the tribe can litigate a URESA action, oral argument revealed that two URESA actions had been referred to tribal courts in Montana with no results. Unless that situation has changed, the tribal courts seem reluctant to decide URESA cases against on-reservation tribal members. Mrs. Flammond could either sue Mr. Flammond in California state court, or disregard URESA and come to

Montana to sue in tribal court for relief. Either alternative clearly defeats the spirit and purpose of the URESA system.

For the purposes of argument, I will assume that the tribal court did entertain and resolve Mrs. Flammond's case. I am still not persuaded that she could receive due process protections since there appears that there may be no adequate appeal from tribal court at the federal level. See Wells v. Philbrick (D. S.D. 1980), 486 F.Supp. 807, 809, n. 2 (concluding that habeas corpus is unavailable in domestic relations cases). It is unfortunate that we have denied Mrs. Flammond her remedy. This maze of legal creations serves only to impede the administration of justice and make a mockery out of judicial economy. Not only is URESA defeated, but the mechanical and practical problems with this decision lead me to believe that Mrs. Flammond and others like her will have a very difficult time obtaining relief.

Although I respect the majority's decision, the result appears to me to be unfair to Mrs. Flammond and unjust to the people of Montana, and I cannot join in their opinion.

John Conway Harrison
Justice