No. 88-76

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

NICK GEIGER,

       Plaintiff and Respondent,

  -vs-

LAVONNE L. PIERCE,

       Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John B. Carter, Pablo, Montana

    For Respondent:

        K. M. Bridenstine, Polson, Montana

Submitted on Briefs: May 19, 1988

Decided: July 14, 1988

Filed: JUL 1 4 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Lavonne L. Pierce appeals from an order of summary judgment from the District Court, Twentieth Judicial District, Lake County, awarding Geiger the sum of $4,500. We reverse.

Appellant raises the following issue for our review: Do the state courts of Montana have primary subject matter jurisdiction over a debt action arising on an Indian reservation, brought by a resident non-Indian creditor against an enrolled tribal member residing on the reservation?

The record discloses the following pertinent facts.

Pierce is an enrolled member of the Confederated Salish and Kootenai Tribes of the Flathead Reservation. She purchased a mobile home from Geiger, a nontribal member, at Geiger's place of business in Polson, Montana. A written contract was entered into and all payments were to be made at Polson, Montana. Polson is within the exterior boundaries of the Flathead Reservation and both parties reside there.

On August 28, 1986, Geiger filed a complaint in District Court alleging that Pierce had failed to make the payments on the installment sales contract and owed the plaintiff $4,500.

After Pierce had answered Geiger's amended complaint, on June 22, 1987, Geiger plaintiff filed a motion for summary judgment. The District Court issued an order granting summary judgment shortly thereafter. On July 23, 1987, Pierce filed her motion to vacate summary judgment claiming for the first time that the District Court lacked jurisdiction over the subject matter of the dispute because she is an enrolled member of the Confederated Salish and

Kootenai Tribes. Briefs were submitted by both parties. The District Court found that it had subject matter jurisdiction over the action and denied Pierce's motion to vacate summary judgment. Pierce appeals from the District Court's order granting Geiger summary judgment as well as the court's subsequent denial of Pierce's motion to vacate the order.

The dispositive issue that we must address is whether the state courts of Montana have primary subject matter jurisdiction over a debt action arising out of transactions on an Indian reservation, brought by a non-Indian creditor against an enrolled tribal member debtor, both of whom reside on the reservation. We find that they do not.

In State ex rel. Iron Bear v. District Court (1973), 162 Mont. 335, 512 P.2d 1292, this Court held:

> Before a district court can assume jurisdiction in any matter submitted to it, it must find subject matter jurisdiction by determining:
>
> (1) Whether the federal treaties and statutes applicable have preempted state jurisdiction; (2) Whether the exercise of state jurisdiction would interfere with reservation self government; and (3) Whether the Tribal Court is currently exercising jurisdiction or has exercised jurisdiction in such a manner as to preempt state jurisdiction.

162 Mont. at 346, 512 P.2d at 1299. See also Williams v. Lee (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251; Security State Bank v. Pierre (1973), 162 Mont. 298, 511 P.2d 325; see generally, Milbank Mut. Ins. Co. v. Eagleman (Mont. 1985), 705 P.2d 1117, 42 St.Rep. 1393 (the first two elements of the Iron Bear test are disjunctive; if either is present, the state lacks subject matter jurisdiction.)

Generally civil jurisdiction over commercial activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty, provision or federal statute.

Iowa Mutual Ins. Co. v. LaPlante (1987), ___ U.S. ___, ___, 107 S.Ct. 971, 978, 94 L.Ed.2d 10, 16. The civil jurisdiction of the tribal court in this matter has not been affirmatively limited by a specific treaty, provision or federal statute. Although the State of Montana has criminal jurisdiction over the Flathead reservation, there has been no consent to assumption by the state of jurisdiction over commercial transactions occurring on that reservation.

In addition, the subject matter of the immediate case is clearly within the pre-emptive jurisdiction assumed by the tribal court of the Confederated Salish and Kootenai Tribes. See Chapter II, Civil Actions, Section 1, Confederated Salish and Kootenai Tribes' Law and Order Code, Ordinance 36(b) as amended (1982). To find primary state courts jurisdiction over this action would impugn the tribal court's right to resolve controversies arising out of commercial conduct occurring between Indians and non-Indians within the boundaries of the reservation. Such authority is clearly an important part of tribal sovereignty. See Montana v. United States (1981), 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 10; Washington Confederated Tribes of Colville Indian Reservation (1980), 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10; Fisher v. District Court (1976), 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106.

It is apparent that the exercise of state jurisdiction in the immediate case would interfere with reservation self-government. As we have stated:

> A tribe's interest in self-government could be implicated in one of two ways. First, if a state or federal court resolves a dispute which was within the province of the tribal courts or of other non-judicial law applying tribal institutions, that court would impinge upon the tribe's right to adjudicate controversies arising within it. Second, if the dispute itself calls

- 4 -

> into question the validity or propriety of an act fairly attributable to the tribe as a governmental body, tribal self government is drawn directly into the controversy.. . .
>
> We have recognized that the tribal court is generally the exclusive forum for the adjudication of disputes affecting the interests of both Indians and non-Indians which arise on the reservation.

Milbank, 705 P.2d at 1119, 42 St.Rep. at 1396; citing R. J. Williams Co. v. Fort Belknap Housing Auth. (9th Cir. 1983), 719 F.2d 979, 983-84, cert.den. 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). We therefore conclude that the District Court here lacked subject matter jurisdiction.

However, Geiger contends that Pierce's failure to raise the state court's lack of subject matter jurisdiction constitutes a bar to that defense. We disagree.

> . . . It is a fundamental axiom of our legal system that the issue of subject matter jurisdiction may be invoked at any time in the course of a proceeding. Larrivee v. Morigeau (1979), 184 Mont. 187, 192, 602 P.2d 563, 566, cert.den. 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 240; Corban v. Corban (1972), 161 Mont. 93, 96, 504 P.2d 985, 987. Furthermore once the issue is raised and a court determines that there is a lack of subject matter jurisdiction, it can take no further action in the case other than to dismiss it. Rule 12(h)(3), M.R.Civ.P.

In Re Marriage of Lance (Mont. 1984), 690 P.2d 979, 981, 41 St.Rep. 2032, 2034.

Although Pierce could have raised the issue of the state court's lack of subject matter jurisdiction earlier in the proceeding, her failure to do so is not fatal to her claim. We hold that the District Court's exercise of jurisdiction over this matter, a civil action on a commercial transaction brought by Geiger against Pierce, an enrolled member of the Confederated Salish and Kootenai Tribes, arising within the

- 5 -

exterior boundaries of the reservation, interferes with tribal sovereignty and the tribe's right of self-government. The state court's jurisdiction over the subject matter was pre-empted by tribal jurisdiction. Accordingly, we reverse the summary judgment granted in the District Court, and direct dismissal of the action upon remittitur.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice Fred J. Weber specially concurs.

While I am forced to acknowledge that federal caselaw requires that this case be dismissed from the state district court for jurisdictional reasons, I am not at all comfortable with the result. As Judge McNeil said in his opinion below:

> The inequity of granting Defendant's Motion to dismiss at this stage of the instant case is obvious. At the time the commercial transaction was entered into, the Plaintiff could not inquire into the tribal member status of the Defendant in order to determine in advance that a State Court forum would be available in the event of a default on the contract. If such an inquiry were made, the Defendant could quite properly claim that her race was a consideration in her application for credit in the form of the installment sale contract giving rise to a claim of discrimination based on race.
> Likewise, at the commencement of this action neither the Plaintiff nor the Court could properly inquire into the tribal member status of the Defendant because the Montana Constitution provides that courts of justice shall be open to every person and that no person may be discriminated against on account of race.
>
> . . .
>
> This Court is not unaware of the Federal Courts' rationale that the sovereign nation concept is a "political classification" and not an "ethnic classification" based on race. The Tribal Council of the Confederated Salish and Kootenai Tribes establishes the criteria for enrollment in said Tribe based on a quantum of Indian blood as determined by said Tribal Council. Non-Indians are not eligible for enrollment. The Federal Courts may consider that to be a political classification for jurisdictional purposes, but it surely appears to this State Court to be a distinction based on race.
>
> . . .

7

> The Constitution of Montana provides that no person shall be denied the equal protection of the laws and that neither the State nor any person shall discriminate against any person in the exercise of his civil or political rights on account of race. <u>Sec. 4, Art. II, Declaration of Rights</u>. In addition, the Constitution of Montana provides that courts of justice shall be open to every person and speedy remedy afforded for every injury. <u>Sec. 16, Art. II, Declaration of Rights</u>. The Montana Constitution further provides that no person shall be deprived of life, liberty or property without due process of law. <u>Sec. 17, Art. II, Declaration of Rights</u>.

Under the holding of the United States Supreme Court as discussed in <u>Pierre</u>, we are required to deny subject matter jurisdiction, even though that issue was raised by the Indian defendant only after the entry of judgment in the underlying cause. As a result, I concur in the opinion reversing the District Court.

I have a sense of frustration similar to that described by the District Court. It seems basically unfair to allow an Indian person to use the state courts so long as that person decides it is to her benefit, but to deny the non-Indian party an equivalent right of access to the same court in this contract dispute. The plaintiff here has been placed in a "Catch-22" position. Before the execution of the contract, the plaintiff here was constitutionally forbidden from asking the defendant if she was an Indian and if she was a member of the Confederated Salish and Kootenai Tribes. When the action was commenced by the plaintiff, there was no basis for an inquiry by the plaintiff nor the court as to whether the defendant was an Indian person who was a member of the Tribe and who claimed a lack of subject matter jurisdiction. As a result, the Indian person was allowed to proceed through the state court trial process to the point of judgment against her, when she concluded it was no longer advantageous to stay

8

in that court. At that point, she could then raise the subject matter jurisdiction question and negative the judgment against her. As a nation, we may be commended for our attempt to protect the Indian people through our state and federal laws. Certainly there was a long period of time when that protection was denied to the Indian people. However, we can be condemned for our failure to develop a just and workable system for both Indians and non-Indians who deal with the Indian people. Here the plaintiff has been denied justice. In the long run, decisions of this type will insure that the Indian people will be penalized as non-Indians protect themselves from dealings with Indian people. I am not proud of the result of this opinion.

_____
Justice

We Concur in the foregoing special concurrence.

_____

_____
Justices

_____
Chief Justice

9