No. 14586

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

NOEL K. LARRIVEE,

                    Plaintiff and Respondent,

    -vs-

DOUGLAS E. MORIGEAU,

                    Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
             Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

    For Appellant:

        Steven Bunch, Legal Services, argued, Helena, Montana

    For Respondent:

        Smith, Connor, Van Valkenburg and Larrivee, Missoula, Montana
        Noel K. Larrivee argued, Missoula, Montana


    For Amicus Curiae:

        Victor F. Valgenti argued,Missoula, Montana
        Evelyn M. Stevenson, Pablo, Montana

---

                  Submitted:  April 27, 1979

                  Decided:  OCT 12 1979

Filed: OCT 12 1979

Thomas J. Kearney
                          Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal by Douglas E. Morigeau arising out of a default judgment taken against him in the District Court, Fourth Judicial District, Missoula County, for the sum of $9,417.70, exclusive of interest and costs.

The facts in the case indicate that Noel K. Larrivee was driving his automobile west on Montana Highway 200 toward its intersection with Montana Highway 212, in Sanders County on February 22, 1978. It further appears that Morigeau, traveling in an automobile in an easterly direction on Highway 200, attempted to turn left onto Highway 212 when his vehicle and that of Larrivee collided.

Larrivee filed his action against Morigeau in the Fourth Judicial District Court, Missoula County, on March 10, 1978. A summons was served upon the defendant personally in Sanders County, on March 15, 1978. On April 20, 1978, Larrivee requested the Clerk to enter default of the defendant Morigeau because Morigeau had failed to appear or answer the complaint. On the same date, the District Court entered default judgment against Morigeau for the amounts above set forth.

On May 1, 1978, Morigeau, through his counsel, filed several instruments in the District Court. One was a motion to set aside the entry of the default judgment upon the grounds of the defendant's mistake, inadvertence, and excusable neglect. The affidavit in support of the motion recites that Morigeau after service upon him, delivered his copy of the complaint to the Tribal Court of the Confederated Salish and Kootenai Tribes on March 20, 1978. Morigeau believed that the Tribal Court, or the tribal attorney, would take steps

-2-

toward the handling of the complaint, a mistaken assumption. On April 13, 1978, the tribal attorney delivered the summons and complaint to Morigeau's attorney, but she was not authorized by Morigeau to act on his behalf until April 19, 1978. There were some telephone conversations between Morigeau's attorney and Larrivee. Apparently there was an oral agreement between them that Larrivee would not take default judgment against Morigeau before April 19 or 20, 1978. Excusable neglect is alleged in that Morigeau's attorney was absent from the state during this period and he did not authorize her to act on his behalf until the afternoon of April 19, 1978. It is contended that the defendant's motions were mailed to Larrivee (though not filed in the court) on April 20, 1978.

The affidavit furthers recites that the place where the accident occurred is within the exterior boundaries of the Flathead Indian Reservation; that the defendant Morigeau is an enrolled member of the Confederated Salish and Kootenai Tribes of that reservation; that Morigeau, living within the exterior boundaries of the reservation, was not subject to service of state court process; and, that the subject matter of the controversy was not within the jurisdiction of the state District Court.

Also on May 1, 1978, Morigeau filed his motion to change venue and dismiss the action. The motion for change of venue was made upon the ground that the accident had occurred in Sanders County where the defendant had been served. The motion to dismiss the action contended that the District Court lacked subject matter jurisdiction because the defendant was an enrolled member of the Confederated Salish and Kootenai Tribes, living within the exterior boundaries of the Flathead Indian Reservation.

-3-

On May 11, 1978, oral argument was heard, evidence taken, and thereupon the District Court denied the motion to set aside the default judgment.

Defendant did not appeal from the order denying his motion to vacate the default judgment. Instead, on August 22, 1978, he filed a motion to vacate the default judgment and dismiss the same for lack of subject matter jurisdiction, again upon the grounds that the action was one between a non-Indian plaintiff and an Indian defendant over an accident which occurred within Indian country and was therefore subject only to the exclusive jurisdiction of the Tribal Court of the Confederated Salish and Kootenai Tribes of the Flathead Indian Reservation.

The District Court refused to set aside the default judgment on October 10, 1978, saying in denying the motion:

> "Both parties are citizens of the State of Montana and each claim all the rights of such citizenship. The public highway was opened to public use and provides a further reason for holding that the State Courts have jurisdiction. The Federal Courts will not take the action holding that there is no diversity of citizenship, as there is not. The simple fact is that the defendant desires to be relieved of responsibilities of citizenship because of his race. The equality of our constitution, both state and federal, abhor any discrimination because of race or any showing of favortism [sic] because of race.
>
> "The defendant is a citizen of the State of Montana and subject to the jurisdiction of its courts."

Appeal from the order of the District Court of October 11, 1978, denying the motion to dismiss for lack of subject matter jurisdiction was taken by Morigeau on November 6, 1978. Confederated Salish and Kootenai Tribes of the Flathead Reservation have filed a brief in this matter as

-4-

amicus curiae, contending that the state District Court does not have subject matter jurisdiction in this case.

From the recitation of the procedures followed in the District Court, as we have set forth above, it will be seen that no proper or timely appeal was taken from the order of the District Court denying the motion to set aside the default judgment on the grounds of excusable neglect, inadvertence or mistake; and no appeal was taken from the order of the District Court denying the motion for change of venue. Whether or not these motions have merit, since timely appeal was not taken from the denial of such motions, this Court is without jurisdiction to consider the issues covered by those motions on appeal. See Flathead Hay Cubing, Inc. v. Rex Moore (1978), 35 St.Rep. 1260 (Cause No. 14327, unpublished); Zell v. Zell (1977), ____ Mont. ____, 565 P.2d 311, 34 St.Rep. 492; First Nat. Bank of Lewistown v. Fry (1978), ____ Mont. ____, 575 P.2d 1325, 35 St.Rep. 276.

In his motion to set aside the default judgment, Morigeau did not precisely rely upon the lack of subject matter jurisdiction as a ground for setting aside that default, although reference to this is made in the affidavits supporting his motion as part of his contention that he had a meritorious defense. It appears from the record that the District Court ruled on the ground that there was no mistake, inadvertence or excusable neglect in denying that motion. We do not consider therefore that the question of subject matter jurisdiction was ruled upon by the District Court when it denied the motion to set aside the default judgment.

The appeal here taken is from the denial of the separate motion filed on August 22, 1978. An attack on subject matter

-5-

jurisdiction may be raised at anytime.  Since we find in this case that the question of subject matter jurisdiction was not precisely ruled upon by the court in its order denying the first motions, the appeal taken by Morigeau from the order denying the motion of August 22, 1978 to vacate and dismiss for lack of subject matter jurisdiction is properly before us for consideration.

The single issue to be decided by us in this appeal therefore is whether the District Court had subject matter jurisdiction on which to sustain the default judgment.

In treading our way through the ever more complicated field of Indian relationships and responsibilities, we find and hold that the Confederated Salish and Kootenai Tribes ceded concurrent civil jurisdiction to the state District Courts of controversies arising out of the operation of motor vehicles within the exterior boundaries of the Flathead Reservation.

The federal Act of August 15, 1953 (Pub.L. 83-280, 83rd Cong., 2d. Sess.), 67 Stat. 588, amended Publication 90-284, 82 Stat. 73, 78, 25 U.S.C. 1321, et seq. (1968), provided for the permissive extension of civil jurisdiction over Indians residing on Indian Reservations to the states where such reservations were located.  In conformance with the federal Act of 1953, the Montana Legislature provided that the governor of Montana, upon receipt of a resolution from a tribal council or other governing body of the Confederated Salish and Kootenai Indians, expressing its desire as a people to be subject to criminal or civil jurisdiction in the State of Montana, should issue a proclamation to that effect.  Ch. 81, Laws of Montana (1963).

-6-

We are not disposed in this case to get into an esoteric discussion of Indian rights and responsibilities vis-a-vis state jurisdiction. It is not necessary here because under an ordinance adopted by the Confederated Salish and Kootenai Tribes, and proclaimed by the governor of this state in accordance with Ch. 81, Laws of Montana (1963), the Confederated Salish and Kootenai Tribes consented to concurrent jurisdiction with state courts of tort claims arising from highway accidents occurring within the exterior boundaries of the Flathead Reservation.

The pertinent provisions of Tribal Ordinance 40-A (Revised) adopted by the Tribal Council of the Confederated Salish and Kootenai Tribes, is as follows:

> "Be it enacted by the Tribal Council of the Confederated Salish and Kootenai Tribes of the Flathead Reservation, Dixon, Montana:
>
> "That Chapter 1, §2 Jurisdiction, of the official code of ordinances be and the same is hereby amended to add subsections 1 and 2 of this ordinance following paragraph 3 to read as follows:
>
> "'Subsection 1. Subject to the conditions and limitations expressed in Subsection 2 hereof, the laws and jurisdiction of the State of Montana, including the judicial system of the State, are hereby extended pursuant to, and subject to the conditions in, the Act of the Montana Legislature of February 27, 1963, Laws of Montana, 1963, Vol. 1, Chap. 81, P. 170, to Indians within the Flathead Reservation to the extent such laws and jurisdiction relate to the subjects following:
>
> > "'(a) Compulsory School Attendance
> >
> > "'(b) Public Welfare
> >
> > "'(c) Domestic Relations (exception adoptions)
> >
> > "'(d) Medical Health, Insanity, Care of the Infirm, Aged and Afflicted
> >
> > "'(e) Juvenile Delinquency and Youth Rehabilitation

"'(f)   Adoption Proceedings (With consent of the Tribal Court)

"'(g)   Abandoned, Dependent, Neglected, Orphaned or Abused Children

"'(h)   Operation of Motor Vehicles upon the Public Streets, Alleys, Roads and Highways

"'(i)   All Criminal Laws of the State of Montana; and all Criminal Ordinances of Cities and Towns with the Flathead Indian Reservation.

"'Subsection 2.   The effectiveness of Subsection 1 hereof is conditioned upon the following:'

"(a)   Concurrent jurisdiction remains (Where applicable with federal courts) with a Tribal Court and in the Tribal government of all matters referred to Subsection 1; and any matter initiated in either state or federal government court or the tribal court shall be completed and disposed of in that court and shall not be subject to re-examination in the courts of the other jurisdiction.

"(b)   No person, once convicted of a crime falling within the jurisdiction of the state or federal government or the tribes pursuant to this ordinance, shall be punished for the identical acts of the courts of the other jurisdiction, but shall be accorded the doctrine of former jeopardy as if the separate jurisdiction were one.

"(c)   This ordinance is subject to possible referendum of the eligible voters of the Confederated Tribes pursuant to Article 9 of the Constitution of Confederated Tribes . . .

"(d)   All jurisdiction of the Confederated Tribes under the Constitutional bylaws and ordinances enacted pursuant thereto under the federal government of the United States Criminal Code, to the extent not expressly transferred by Subsection 1 hereof, remains the Confederated Tribes and in the federal government respective to the same extent as if this ordinance had not been adopted.

"(e)   If any provision of the act of the Montana Legislature of February 27, 1963 Laws of Montana 1963, Vol. 1, Chapter 81, or of this ordinance shall be held invalid, or if this ordinance be held to extend the jurisdiction more extensive than set forth

herein, or any condition herein not be complied with or be held invalid or ineffective, then this entire ordinance shall be held to be void and of no effect from the beginning." (Emphasis added.)

The foregoing ordinance was adopted by the Tribal Council of the Confederated Salish and Kootenai Tribes on May 5, 1965. The governor of the State, the Honorable Tim Babcock, on October 8, 1965 proclaimed under the provisions of Ch. 81, Laws of Montana (1963), as follows:

"Now therefore, by the power vested in me, as the governor of the State of Montana, I, Tim Babcock, hereby proclaim that criminal and civil jurisdiction in the State of Montana, and its subdivisions does extend to the Confederated Salish and Kootenai Tribes as expressed in their approved Ordinance No. 40-A (revised) . . . and I further declare that 60 days from the date of October 8, 1965, such criminal and civil jurisdiction as previously described shall be in full force and effect." (Emphasis added.)

The Montana legislative action authorizing the governor to proclaim jurisdiction and the adoption of Tribal Ordinance 40-A (Revised) occurred under and while Section 7 of Pub.L. 83-280 was in effect. It should be noted that this section was repealed in Pub.L. 90-284 (1968), Title IV, Section 403(b). However the repealer expressly provided that the repeal did not affect any cession made prior to the repeal.

For any viewpoint of construction, Tribal Ordinance 40-A (Revised), as accepted and proclaimed by the governor of Montana, includes a broad grant of concurrent jurisdiction. The key language is that "[t]he laws and jurisdiction in the State of Montana, including the judicial system of the State" are extended to "(h) Operation of Motor Vehicles upon the Public Streets, Alleys, Roads, and Highways". Yet Morigeau contends, as does amicus, that this language is intended to grant only criminal jurisdiction over the operation of motor vehicles and not civil jurisdiction.

-9-

Nothing can be found within the tribal ordinance consenting to state jurisdiction or the governor's proclamation assuming the same that limits or excludes state civil jurisdiction over the operation of motor vehicles on state highways.

Morigeau also contends, and again so does amicus, that subdivision (h) of the tribal ordinance is governed by subdivision (i) of the same ordinance, which consents to concurrent jurisdiction with the state as to all "criminal laws of the State of Montana". However, the legislative language of Tribal Ordinance 40-A (Revised), and its history does not comport with this argument.

Tribal Ordinance 40-A of the Confederated Salish and Kootenai Tribes was first passed on May 15, 1964. In the original version, subdivision (i) of subsection 1 read as follows:

> "(i) Laws of the State of Montana and
> ordinances and regulations of a criminal
> nature applicable within incorporated
> cities and towns."

Less than a year later on May 5, 1965, Tribal Ordinance 40-A (Revised) was passed by the Tribal Council amending subdivision (i) so that it reads as we have set it forth above in the first instance. It is obvious that the tribes, in examining Tribal Ordinance 40-A, as it was first adopted, decided that subdivision (i) was a broad grant of concurrent jurisdiction to all the laws of the State of Montana, both civil and criminal. That particular subdivision was amended so that only criminal laws of the State of Montana were included in subdivision (i). At the same time, however, the language of subdivision (h) was left untouched. In other words, the broad consent to concurrent jurisdiction by the tribes as expressed in subdivision (h) remained and still remains.

-10-

It is also obvious from the history of the act that the whole subject of Tribal Ordinance 40-A, is a controversal one on the reservation. We noted its stormy progress in State ex rel. McDonald v. District Ct. of Fourth J. D. (1972), 159 Mont. 156, 496 P.2d 78, 80, where we said:

> "Tribal consent to the assumption of criminal jurisdiction by the state courts of Montana over Indians committing crimes on the Flathead Indian Reservation was granted by the enactment of Tribal Ordinance 40-A, dated May 16, 1964. The governor of Montana thereafter issued the required proclamation on June 30, 1964. Almost a year later on May 5, 1965 Tribal Ordinance 40-A (Revised) was enacted. This Ordinance was similar to the original Ordinance 40-A except for clarifying language limiting its scope to criminal laws and repealing the original Ordinance 40-A. The governor of Montana thereafter issued another proclamation accordingly dated October 8, 1965.

> "Several months later on June 22, 1966, Tribal Resolution 1973 was enacted expressly rescinding Tribal Ordinances 40-A and 40-A (Revised). There is no evidence that this Tribal Resolution was ever transmitted to or received by the governor of Montana; nor was any proclamation of the governor made in connection with this Resolution. On June 30, 1966 Tribal Resolution 1997 was enacted which expressly rescinded Tribal Resolution 1973 enacted eight days previously. Again no governor's proclamation was issued concerning Tribal Resolution 1997.

> "On September 15, 1967 Tribal Resolution 2318 was enacted requesting the governor of Montana to extend the time limit for withdrawal from state jurisdiction for an additional year after October 7, 1967, and withdrawing its consent to such state jurisdiction. It further provided that this Tribal Resolution was null and void if the governor extended such time limit as requested. On October 8, 1967 the governor issued a third proclamation extending the time limit for the Tribe's withdrawal of their consent to state jurisdiction for an additional year from October 7, 1967.

> "Finally, on April 30, 1971, the Tribal Council passed a motion 'to seek retrocession on State Concurrent Jurisdiction'. The record discloses no further action in conformity with this motion." 159 Mont. at 160, 161, 496 P.2d at 80.

One of the features of Ch. 81, Laws of Montana (1963), the legislative act which provided for the consent on the part of the State of Montana to extend jurisdiction to the

-11-

Flathead Reservation is that statute provided that any consent by an Indian tribe could be withdrawn within two years of the date of the governor's proclamation. Such a withdrawal has not occurred.

Morigeau and amicus contend flatly that Tribal Ordinance 40-A (Revised) does not extend state jurisdiction in tort actions arising from the operation of motor vehicles on the highway. They argue (1) the Tribal Court has exclusive jurisdiction when a non-Indian sues an Indian on a reservation-based claim; (2) that the tribes agreed only to limited concurrent state civil jurisdiction not including tort claims of the kind here in question; (3) tribal interpretation of/Ordinance 40-A (Revised) is against concurrent jurisdiction; and (4) construction of Tribal Ordinance 40-A (Revised) to include civil jurisdiction in tort-highway cases would constitute an infringement upon tribal sovereignty.

In support of their arguments on the first contention, that the tribe has exclusive jurisdiction, Morigeau and amicus point out that this accident occurred in Indian country; that the highways exist by virtue of easements granted by the tribal authorities to the state and federal governments; that the Flathead Tribal Court is a forum for actions in tort available to non-Indians as well as to Indians, and that the Tribal court has jurisdictional scope to include tort actions such as the one here. Those points, while significant in determining that the Tribal Court has jurisdiction, do not necessarily point to <u>exclusive</u> juris-diction in the Tribal Court. None of the cases cited by Morigeau and amicus in support of those points hold or require that <u>only</u> the Tribal Court of the Flathead Indian Reservation, after the cession under Pub.L. 83-280, has

-12-

exclusive jurisdiction of tort actions arising out of the use of the highways on the reservation. As a matter of fact, it appears that the Council of the Confederated Salish and Kootenai Tribes voluntarily found it in their interest to consent to such jurisdiction by the adoption of Tribal Ordinance 40-A (Revised).

Another consideration argued by Morigeau and amicus is that assumption of the State of civil jurisdiction in this case would constitute an infringement on the tribes of self-government. Again, this argument overlooks the point that the Confederated Salish and Kootenai Tribes granted and the State assumed civil and criminal jurisdiction to matters involving the use of the highways within the borders of the reservation. It is no more an infringement upon the tribal sovereignty to grant civil and criminal jurisdiction in highway cases than it is to grant civil and criminal jurisdiction over cases of public welfare, domestic relations, juvenile delinquency, and care of the infirmed, aged and afflicted, all of which subjects involve tribal sovereignty and for all of which the tribe granted consent to civil as well as criminal jurisdiction in Tribal Ordinance 40-A (Revised).

As the tribal ordinance states, if the consent to civil and criminal jurisdiction is ineffective as to one part, it is ineffective as to all parts of the tribal ordinance. It is too late now to pick and choose which parts of Tribal Ordinance 40-A (Revised) will be binding and which parts will not be binding. There are many economic, financial and social advantages  accruing to the tribes by virtue of their consent. Those advantages have accompanying responsibilities which, to make the system workable, must also be faced and accepted.

-13-

What we have said in the foregoing paragraphs concerning the tribal claim of exclusive jurisdiction, touches and controls also the tribal claims that the tribes agreed only to limited concurrent state civil jurisdiction, not including tort claims of the kind here in question, and that construction of Tribal Ordinance 40-A (Revised) to include civil jurisdiction in tort-highway cases, constitutes an infringement upon tribal sovereignty. There remains for discussion the claim of Morigeau and amicus that tribal interpretation of/Tribal Ordinance 40-A (Revised) is against state court jurisdiction.

In support of their contention, Morigeau and amicus point to our holding in Security State Bank v. Pierre (1973), 162 Mont. 298, 300, 511 P.2d 325, 327. There we said, quoting State ex rel. Iron Bear v. District Court (1973), 162 Mont. 335, 512 P.2d 1292:

> "Before a district court can assume juris-
> diction in any matter submitted to it, it
> must find subject matter jurisdiction by
> determining: (1) whether the federal
> treaties and statutes applicable have
> preempted state jurisdiction; (2) whether
> the exercise of state jurisdiction would
> interfere with reservation self-government;
> and (3) whether the Tribal Court is currently
> exercising jurisdiction or has exercised
> jurisdiction in such a manner as to preempt
> state jurisdiction."

With respect to the first test stated in Iron Bear, the federal treaties and statutes have not in this case preempted state jurisdiction, because Pub. L. 83-280 provided particularly for the cession to and assumption by states of criminal and/or civil jurisdiction on Indian lands within the state's borders.

With respect to the second Iron Bear test, it is true that the assumption of either criminal or civil jurisdiction by the state of matters arising within the exterior boundaries

-14-

of the Flathead Indian Reservation constitutes an inter-
ference with the powers of self-government conferred upon
the tribes, see Fisher v. District Court (1976), 424 U.S.
382, 387, 96 S.Ct. 943, 47 L.Ed.2d 106. Again, Pub.L.
83-280 contemplated such interference when it provided for
the assumption of criminal or civil jurisdiction by the
states.

It is with respect to the third test under Iron Bear
whether the Tribal Court has preempted jurisdiction, that
Morigeau and amicus have concentrated their attack. Amicus
has supplied us, through its briefs, with various certificates
showing the establishment of a judicial system on the
Flathead Reservation; the existence of a Tribal Court
comprised of one Chief Judge, one full time associate, and
two parttime associate judges; the Tribal Court has adjudicated
claims arising from automobile accidents involving non-
Indians versus Indian defendants relating to accidents
occurring on the reservation; the Tribal Court keeps records,
and that since 1975, 460 non-Indian plaintiffs have sued
Indian defendants in civil actions in the Tribal Court,
involving tort and contract claims against Indian defendants;
and various excerpts from the minutes of meetings of the
Tribal Council relating to the progress through the legislature
of House Bill 55, which became Ch. 81, Laws of Montana
(1963). Yet, all of this material shows not that the Tribal
Court is exercising exclusive jurisdiction, but rather is
exercising concurrent jurisdiction in these matters, insofar
as they are covered by Tribal Ordinance 40-A (Revised). The
Tribal Ordinance itself specifically speaks of concurrent
jurisdiction and it is important to note that Tribal Ordinance
40-A (Revised) includes the provision that any action commenced
and completed either in the Tribal Court or in the state on a
matter is covered by the ordinance becomes res judicata as
to the other court.

-15-

The record therefore does not support the application of the third test under Iron Bear, preemption by the Tribal Court, because when the Tribal Court acts with respect to causes covered by Tribal Ordinance 40-A (Revised), it is acting concurrently, and not exclusively.

Both Morigeau and amicus point to Kennerly v. District Court of Montana (1971), 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507, as controlling precedent for the present case. Kennerly, however, is not in point because the legislature there had not taken affirmative action as required under Pub.L. 83-280. Nor does our decision in Security State Bank v. Pierre, supra, control this case because in Security State Bank, the action was for the collection of a note entered into on the Flathead Reservation between an Indian member of the tribes residing on the Reservation and a nonmember bank. Such a commercial transaction is not one of the subjects over which the state assumes jurisdiction through Tribal Ordinance 40-A (Revised).

One other suggestion contained in Morigeau's reply brief should be discussed. Morigeau contends that this case involves an interpretation of tribal law and that therefore, under principles of comity, this Court should abstain from a decision until the Tribal Court on the Flathead Reservation has interpreted the extent of civil jurisdiction ceded under subdivision (h) of Tribal Ordinance 40-A (Revised).

Abstention, Morigeau contends, would reduce "inter-governmental friction" likening the "competing interests" both of the state and the tribes to a "Pullman-type abstention situation" (Railroad Comm'n v. Pullman Co. (1941), 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed.2d 971). Morigeau also points out that in Fisher, 424 U.S. 382, 384, the United States Supreme Court noted that the Montana District Court had first referred the jurisdictional question to the Appellate Court of the Northern Cheyenne Tribe for decision.

-16-

Of course, in Fisher, supra, the dispute was completely between Indian members of the Northern Cheyenne Tribe. Moreover, the Appellate Court of the Northern Cheyenne Tribe, in Fisher, specifically did not decide whether the tribal court had jurisdiction of adoption by nonmembers of a member of a tribe. (See 424 U.S. at 384, n. 6.)

We are not disposed to follow the federal system of abstention in this matter. First, such abstention would in this case simply leave the parties as they were at the close of the District Court proceedings. Morigeau is entitled to a final decision by this Court as to the validity of the judgment held by Larrivee against him. Secondly, the sovereign state of Montana is entitled in the least to an equal say in the interpretation of an agreement to which its full consent was necessary. It would be strange indeed if the state should agree to be bound by such interpretation of its consent as the other party chose to give it.

We therefore hold that the District Court had subject matter jurisdiction in this case through Tribal Ordinance 40-A (Revised); Ch. 81, Laws of Montana (1963), and Pub. L. 83-280, 67 Stat. 588 (1953).

This ruling is limited in effect, of course, to the Flathead Indian Reservation. This holding has no reference to the reasons cited by the District Court for upholding jurisdiction.

Affirmed.

_John C. Sheehy_
Justice

-17-

We Concur:

_____
Chief Justice

_____

_____
Justices


Mr. Justice Daniel J. Shea will file his dissent at a later
time.