[No. 13532-2-III.    Division Three.    December 22, 1994.]

TONY McCREA, *Appellant*, v. RICK DENISON, ET AL, *Respondents.*

*Robert A. Simeone*, for appellant.

*Thomas S. Rice* of *University Legal Assistance* and *Mary E. Owen*, for respondents.

*Christopher Gray, Spokane Tribal Attorney*, amicus curiae.

SWEENEY, A.C.J. — This case is before the court on stipulated facts. On April 13, 1991, Tony McCrea was a passenger in the car driven by Rick Dennison.[1] While traveling on a state highway running through the Spokane Indian Reservation, Mr. Dennison rolled the car off the road and as a result Mr. McCrea was injured. Mr. Dennison is a member of the Spokane Indian Tribe and Mr. McCrea is a descendant of the Tribe; both reside on the reservation.

Mr. McCrea filed suit in state court for damages caused by Mr. Dennison's negligence. The Superior Court granted Mr. Dennison's motion to dismiss for lack of subject matter jurisdiction because the alleged tort occurred on the Spokane Indian Reservation. We reverse and remand.

## DISCUSSION

The question presented is whether RCW 37.12.010, which, among other things, grants the State concurrent "civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state . . . [for] [o]peration of motor vehicles upon the public . . . highways", confers jurisdiction for a tort action arising from an automobile accident on reservation highways.

While an understanding of the legislative history leading to the enactment of RCW 37.12.010 is not necessary to understand what we believe to be the clear meaning of the statute or the Legislature's intent, such history does provide an explanation for the State's unilateral assumption of criminal and civil jurisdiction over Indians while on Indian reservations. *Applied Indus. Materials Corp. v. Melton*, 74 Wn. App. 73, 78, 872 P.2d 87 (1994); *Clarke v. Equinox Holdings, Ltd.*, 56 Wn. App. 125, 130, 783 P.2d 82, *review denied*, 113 Wn.2d 1001 (1989).

Prior to 1953, all power to regulate both criminal and civil matters affecting Indians on reservations was exclusively

---

[1]We note from the record the correct spelling of the last name of the Respondents is Dennison.

with the Congress of the United States and the tribes themselves. *Confederated Tribes v. Washington*, 938 F.2d 146, 147 (9th Cir. 1991), *cert. denied*, 112 S. Ct. 1704 (1992). In 1953, Congress removed preexisting federal restrictions on state jurisdiction over Indian country with the enactment of the act of August 15, 1953, 28 U.S.C. § 1360, which has been commonly referred to as Public Law 280. *Three Affiliated Tribes v. Wold Eng'g*, 476 U.S. 877, 879, 90 L. Ed. 2d 881, 106 S. Ct. 2305 (1986). The purpose of Public Law 280 was "to extend the jurisdiction of the States over Indian country and to encourage state assumption of such jurisdiction . . .". *Three Affiliated Tribes*, 476 U.S. at 887. It required that certain states[2] assume civil and criminal jurisdiction over certain Indian tribes and lands and also authorized all other states to unilaterally assume civil and criminal jurisdiction by legislative fiat. Public Law 280 also provided procedures for the assumption of such jurisdiction. *Makah Indian Tribe v. State*, 76 Wn.2d 485, 487, 457 P.2d 590 (1969).

With respect to the assumption of civil jurisdiction in actions in which Indians were parties, Public Law 280 provided that

> the States . . . shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country . . . to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State[.]

28 U.S.C. § 1360(a).

Our State Legislature responded to this congressional grant of authority by enacting the Laws of 1957, ch. 240, p. 941 (as amended, this is the current RCW 37.12.010).[3] The statute

---

[2]The act required that the states of California, Minnesota, Nebraska, Oregon and Wisconsin assume civil and criminal jurisdiction over certain Indian lands and tribes situated in their respective states.

[3]RCW 37.12.010 provides:

"The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and

required a request by the tribe, tribal council, or other governing body in order for the state to assume criminal or civil jurisdiction. RCW 37.12.021. Eight specified categories were, however, excepted from the prerequisite of tribal consent, including "[o]peration of motor vehicles upon the public streets, alleys, roads and highways". RCW 37.12.010(8). The United States Supreme Court has concluded that the Washington statutory scheme complies with Public Law 280 and passes constitutional muster. *Washington v. Confederated Bands & Tribes*, 439 U.S. 463, 58 L. Ed. 2d 740, 99 S. Ct. 740 (1979).

Mr. Dennison's challenge to the State's assumption of jurisdiction begins with his assertion that the term "[o]peration of motor vehicles upon . . . highways" is ambiguous. From that assertion, he then argues the "ambiguity" must be resolved in favor of the tribe, relying on *State v. Schmuck*, 121 Wn.2d 373, 396, 850 P.2d 1332, *cert. denied*, 114 S. Ct. 343 (1993). We disagree with the assumption that the language of the statute is ambiguous.

▬ We begin the process of statutory interpretation by first accepting the plain and unambiguous language of the statute. *Applied Indus.*, at 78. The statute, reduced to the essential terms applicable to this case, provides that the

---

lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked, except for the following:

"(1) Compulsory school attendance;

"(2) Public assistance;

"(3) Domestic relations;

"(4) Mental illness;

"(5) Juvenile delinquency;

"(6) Adoption proceedings;

"(7) Dependent children; and

"(8) Operation of motor vehicles upon the public streets, alleys, roads and highways; PROVIDED FURTHER, That Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if chapter 36, Laws of 1963 had not been enacted."

State of Washington has assumed civil jurisdiction over Indians and Indian country in certain specified areas, including "[o]peration of motor vehicles upon . . . highways". RCW 37.12.010(8). Neither the fact of the assumption of jurisdiction by the State nor the scope of the assumption of that jurisdiction is ambiguous in our judgment. First, "civil jurisdiction" has a clear and well defined meaning. *See Powell v. Farris*, 94 Wn.2d 782, 784, 620 P.2d 525 (1980) (Public Law 280 authorized Washington to assume jurisdiction over "civil causes of action"). While the term is broad, it is not ambiguous and would most certainly encompass an action for money damages arising from the negligent operation of a motor vehicle. *See Thomsen v. King Cy.*, 39 Wn. App. 505, 509, 694 P.2d 40 (Public Law 280 civil jurisdiction is limited to private causes of action), *review denied*, 103 Wn.2d 1030 (1985).

Operation of a motor vehicle likewise has a well defined and accepted meaning. While the definition section of the motor vehicles act (RCW 46.04) does not specifically define operation, it does define operator or driver to mean "every person who drives or is in actual physical control of a vehicle". RCW 46.04.370. Other states have defined the term operation of a motor vehicle to include "nearly any activity that deals specifically with the motor vehicle, i.e., the actual physical structure and attendant parts of the vehicle.'" *Bowman v. Missouri*, 763 S.W.2d 161, 162 (Mo. App. 1988) (quoting *Johnson v. Carthel*, 631 S.W.2d 923, 927 (Mo. App. 1982). Motor vehicle means "every vehicle which is self-propelled . . .". RCW 46.04.320. Mr. Dennison was therefore operating a motor vehicle on April 13, 1991, at the time he was involved in this accident. The operation of the motor vehicle resulted in an accident which in turn resulted in a civil lawsuit, a lawsuit over which the State had assumed jurisdiction.

Mr. Dennison argues, however, that RCW 37.12.010 must be read narrowly because it was a "compromise bill" which rejected calls for the assumption of complete criminal and civil jurisdiction over Indians. While this may be true, the "compromise bill" ultimately passed and included the assumption of civil jurisdiction over the operation of motor

vehicles. RCW 37.12.010(8). There is legislative history which would support Mr. Dennison's contention that at least the governor intended that the statute apply to "traffic offenses" only.[4] There is no language in the final bill, however, which would so limit the jurisdiction of state courts.

The Montana case of *Larrivee v. Morigeau*, 184 Mont. 187, 602 P.2d 563 (1979), *cert. denied*, 445 U.S. 964 (1980) is persuasive authority. There the defendant Morigeau was involved in an automobile accident with Larrivee. The accident occurred on the Flathead Reservation. Morigeau was an enrolled member of the Confederated Salish and Kootenai Tribes of that reservation. *Larrivee*, 184 Mont. at 189. Larrivee took a default judgment and Morigeau moved to set it aside on the basis the state court had improperly assumed jurisdiction. The court ultimately held that the state court had subject matter jurisdiction as a result of the tribal ordinance granting state civil and criminal jurisdiction pursuant to a Montana statute similar to RCW 37.12.010.[5]

Mr. Dennison attempts to distinguish *Larrivee*, arguing that assumption of jurisdiction there followed the express

---

[4]*See* "Message to the Senate in Connection with Signing of Senate Bill No. 56", Senate Journal, 38th Legislature (1963), at 939:

"Today I have signed into law, with some reluctance, Senate Bill No. 56, which was prepared at the recommendation of the Legislative Council after two years of hearings. This bill permits the state of Washington to assume full and complete jurisdiction of Indians and on all Indian lands for certain specified purposes, to wit: Compulsory school attendance, public assistance, domestic relations, mental illness, juvenile delinquency, adoption proceedings, dependent children and *traffic offenses*." (Italics ours.)

[5]"The pertinent provisions of Tribal Ordinance 40-A (Revised) . . . [are] as follows:

" ' . . . .

" 'Subsection 1. Subject to the conditions and limitations expressed in Subsection 2 hereof, the laws and jurisdiction of the State of Montana, including the judicial system of the State, are hereby extended pursuant to, and subject to the conditions in, the Act of the Montana Legislature of February 27, 1963, Laws of Montana, 1963, Vol. 1, Chap. 81, P. 170, to Indians within the Flathead Reservation to the extent such laws and jurisdiction relate to the subjects following:

" ' . . . .

" '(h) Operation of Motor Vehicles upon the Public Streets, Alleys, Roads and Highways". (Italics omitted.) *Larrivee*, 184 Mont. at 193.

intent of the tribe, as evidenced by the enactment of Tribal Ordinance 40-A (Revised) (the act conferring jurisdiction on the state). *Larrivee*, 184 Mont. at 193. The distinction however is not material to the disposition here. As we have noted, the congressional enabling act authorized states to assume jurisdiction by *either* consent of the tribe or unilateral assumption. Either vehicle for the assumption of jurisdiction effectively confers jurisdiction on state courts. One method of conveying the same jurisdictional authority should not differ in its effect from a second, so long as both are in accordance with the authority extended by Congress.

Both the tribal statute in *Larrivee* and the state statute here extend civil jurisdiction to "operation of motor vehicles". *Larrivee*, 184 Mont. at 193; RCW 37.12.010(8). The primary thrust of the amicus in *Larrivee* and the amicus here is that this "language is intended to grant only criminal jurisdiction over the operation of motor vehicles and not civil jurisdiction." *Larrivee*, 184 Mont. at 195. The court in *Larrivee* dismissed the contention, noting that Tribal Ordinance 40-A (Revised) granted concurrent civil and criminal jurisdiction over controversies relating to the operation of motor vehicles on tribal highways. *Larrivee*, 184 Mont. at 195. The same should be said about RCW 37.12.010(8).

## COMITY

■ ■ Mr. Dennison maintains that even if RCW 37.12.010(8) grants concurrent state jurisdiction over this tort action, jurisdiction should be extended to the tribal court under the principles of comity. Again, we disagree. First, much of the civil litigation in our courts is concerned with matters arising out of property damage, personal injury, and death caused by the operation of motor vehicles. *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 25 Wn. App. 841, 846, 611 P.2d 1304, *aff'd*, 95 Wn.2d 373, 622 P.2d 1234 (1980), *adhered to on reconsideration*, 97 Wn.2d 203, 643 P.2d 441 (1982). Washington has a strong interest in assuring the full compensation of persons injured in automobile accidents. *See, e.g., La Point v. Richards*, 66 Wn.2d 585, 590, 403 P.2d 889 (1965) (the financial responsibility law, RCW 46.29, is

designed to ensure monetary protection for those injured by negligent drivers on state highways). Second, the purpose in permitting the assumption of civil jurisdiction was to afford Indians a forum to settle private disputes among themselves. *Confederated Tribes*, at 147. The rights and obligations of parties embroiled in civil litigation as the result of automobile accidents are well settled by state statutes and state common law. RCW 46.29; *Wiscomb*, 95 Wn.2d at 379-80 (examining family exclusionary clauses in light of public policy). State courts, accordingly, are a more appropriate forum for the resolution of such issues.

Reversed and remanded for trial in state court.

MUNSON and SCHULTHEIS, JJ., concur.