[No. 16841-7-III.   Division Three.   February 9, 1999.]

SALVADOR CORDOVA, ET AL., *Respondents*, v. OTTIS
HOLWEGNER, ET AL., *Appellants*.

*Jack W. Fiander* and *Rosa M. Cortez*, for appellants.
*Blaine L. Tamaki* and *Moni T. Law* of *Blaine L. Tamaki & Associates, Inc.*, for respondents.

Kurtz, A.C.J. — Salvador and Jeannette Cordova filed the underlying action seeking damages from YA-KI-MA Logging II, Inc., and Ottis and Silvia Holwegner for injuries sustained by Mr. Cordova that were allegedly caused by the negligence of Mr. Holwegner. The incident occurred while both men were working for YA-KI-MA Logging II, Inc. (hereinafter YA-KI-MA Logging or the tribal corporation), at a logging site located in the closed area of the Yakama reservation. Although YA-KI-MA Logging is a tribal corporation licensed by the Yakama Tribe, none of the individual parties to the action are tribal members.

The Cordovas initially filed suit against both the tribal corporation and the Holwegners in state court, but voluntarily dismissed the tribal corporation after the Holwegners and YA-KI-MA Logging filed a motion to dismiss for lack of subject matter jurisdiction. The Holwegners then filed a motion to dismiss the complaint contending the

tribal corporation was a necessary and indispensable party that could not be joined because the trial court lacked subject matter jurisdiction over tribal corporations. The court denied this motion and the Cordovas were awarded damages at the conclusion of a bench trial. Three questions are presented on appeal. First, was the tribal corporation an indispensable party to this litigation? Second, does RCW 37.12.010 operate to confer exclusive jurisdiction over this matter in Yakama tribal court as opposed to state court? Third, does the Yakama tribal court have exclusive or concurrent jurisdiction over this litigation based on the inherent sovereignty of the Yakama Tribe? Based on the record here, we affirm the decision of the trial court.

## FACTS

On December 28, 1995, Salvador Cordova was injured while working as a landing chaser for YA-KI-MA Logging. YA-KI-MA Logging was conducting logging operations on the Pearl Creek Logging Unit of the Yakama Indian Reservation. This area is located in the closed portion of the Yakama reservation. The Yakama Tribe regulates logging on the closed portion of the reservation and nonmembers, like Mr. Cordova and Mr. Holwegner, must have the tribe's permission to enter the area.

YA-KI-MA Logging is an Indian tribal corporation licensed by the Yakama Indian Nation. YA-KI-MA Logging's shareholders include Selina Beard, an enrolled Yakama tribal member, who owns a 51 percent interest and Ottis Holwegner, a nonmember, who owns a 49 percent interest. In addition to being a shareholder in the corporation, Mr. Holwegner worked for the corporation as a supervisor and heavy equipment operator.

At the time of the accident, Mr. Holwegner was operating the loader and was also the person on the site in charge of the entire operation. When seated in the loader, the driver can see out the front and side windows, but cannot see out the rear window when the loader is operating. Aware of

this problem, Mr. Holwegner had established safety zones and required that drivers make eye contact with other workers to ensure that the operation of the loader would not cause injury to someone whom the driver could not see.

As landing chasers, Mr. Cordova and others were responsible for limbing and bucking (cutting to log length) all trees skidded into the landing area. The loader was then used to pick up and transport the finished logs to a waiting log truck. After the logs were loaded, it was usually the responsibility of the truck driver to brand or stamp the front end of each log by striking them with a raised brand located on the end of a heavy hammer. Although the stamping procedure varies with each job, it is "universally" recognized that the logs are not to be stamped while the loader is operating and the truck is within its reach.

On December 28, 1995, Mr. Holwegner loaded logs into a truck and then shouted to Mr. Cordova to stamp the logs. Mr. Cordova told Mr. Holwegner that this was not his job and the truck driver informed Mr. Holwegner that he had already stamped the logs. Mr. Holwegner expressed some concern about the manner in which the logs were being stamped and told Mr. Cordova to do it anyway. Because of his short height, Mr. Cordova had to stand on the logs to stamp them. Consequently, Mr. Cordova took the hammer from Mr. Holwegner, climbed on top of the logs, and began to stamp them.

Within a minute and a half of handing the stamping hammer to Mr. Cordova, Mr. Holwegner started the loader. Another driver approached with a skidder. Assuming that the truck driver had moved the log truck forward, Mr. Holwegner maneuvered the loader to pick up a log, swinging the boom of the loader. The skidder driver, who could see Mr. Cordova on the logs, shouted a warning to Mr. Holwegner that could not be heard over the noise. The driver also waved his arms frantically, but Mr. Holwegner did not see these gestures. Realizing the potential danger, Mr. Cordova attempted to run to the other end of the logs. As the boom swung, the counterbalance hit a log and knocked Mr. Cor-

dova down. When the boom swung back it struck the log again, and another log fell on Mr. Cordova's ankle causing a severe fracture.

On July 24, 1996, Mr. and Mrs. Cordova filed a complaint against Mr. and Mrs. Holwegner and YA-KI-MA Logging, alleging that Mr. Holwegner negligently injured Mr. Cordova and that Mr. Holwegner was acting as the agent of YA-KI-MA Logging. The Cordovas also alleged that YA-KI-MA Logging was not paying Labor and Industries premiums on behalf of Mr. Cordova at the time of the accident and had thereby waived any immunities under the applicable statutes. YA-KI-MA Logging and the Holwegners subsequently filed a motion to dismiss on the grounds that the court lacked subject matter jurisdiction. On February 21, the Cordovas voluntarily dismissed, without prejudice, their claims against YA-KI-MA Logging. The Holwegners then moved to dismiss the complaint on the grounds that YA-KI-MA Logging was a necessary and indispensable party who could not be joined because the court lacked personal and subject matter jurisdiction over this party. The trial court denied the motion.

After a bench trial, the court entered its findings and conclusions. The court found that as the "foreman and person in control of the complete logging operation, Mr. Holwegner was specifically in charge of employee and site safety." The court also determined that Mr. Holwegner had a duty to know where his employees were before he started and moved the loader. Concluding that Mr. Holwegner was negligent and that this negligence was the proximate cause of Mr. Cordova's injuries, the court awarded damages to the Cordovas in the amount of $83,949.41.

The Holwegners appeal. They contend the court erred in denying the motion to dismiss for lack of subject matter jurisdiction and failing to dismiss the complaint for inability to join a necessary indispensable party. In the alternative, they contend the trial court should have abstained from exercising jurisdiction over this suit and transferred the matter to the tribal court. Before we consider the authority

of the trial court to assume jurisdiction over this action, we must determine the identities of the parties. For this reason, we first address the question concerning the court's failure to dismiss the complaint for inability to join a necessary and indispensable party.

## ANALYSIS

Was YA-KI-MA Logging a necessary and indispensable party in a tort action against a negligent nonmember employee?

The Holwegners challenge the trial court's denial of their motion to dismiss for inability to join a necessary and indispensable party. They contend that the joinder of the tribal corporation is needed for just adjudication and that in its absence, the parties cannot be granted complete relief. The Holwegners further contend that because of its absence, the tribal corporation was unable to defend against the claims against its agent, Mr. Holwegner, and that there is a risk of multiple or conflicting judgments because jurisdiction over the tribal corporation rests exclusively in tribal court.

The application of CR 19 requires a two-part inquiry. *In re Johns-Manville Corp.*, 99 Wn.2d 193, 197, 660 P.2d 271 (1983). First, the court must make a determination as to whether the absent party is a necessary party, that is, a party needed for a just adjudication under CR 19(a). Second, if the court determines that the absent party cannot be joined, the court must determine if "in equity and good conscience" the action should proceed or should be dismissed because the absent party is indispensable. CR 19(b).

To determine whether a party is necessary under CR 19(a), the court must decide whether the party's absence from the proceedings would prevent the court from affording complete relief to the existing parties and whether the party's absence would impair that party's interest or subject any existing party to inconsistent or multiple li-

ability. However, in Washington, "[a]n employer and its employees are jointly and severally liable for the negligent acts of the employee in the scope of employment, and one damaged by such acts can sue both the employer and the employee or either separately." *Orwick v. Fox*, 65 Wn. App. 71, 80, 828 P.2d 12, *review denied*, 120 Wn.2d 1014 (1992) (citing *James v. Ellis*, 44 Wn.2d 599, 605, 269 P.2d 573 (1954)). Consequently, an employer is a proper, although not a necessary, party in an action against an employee. *Orwick*, 65 Wn. App. at 81.

The trial court did not err in denying the Holwegners' motion to dismiss for inability to join an indispensable party. Under Washington law, the Cordovas could elect to sue both the tribal corporation and the employee, or the employee alone. Because the tribal corporation is not a necessary party under CR 19(a), we need not consider the Holwegners' arguments that the tribal corporation was an indispensable party under CR 19(b).

Did the tribal court have exclusive or concurrent jurisdiction over this tort litigation involving nonmembers?

■ Jurisdictional determinations present a question of law that is reviewed de novo. *Lewis v. Bours*, 119 Wn.2d 667, 669, 835 P.2d 221 (1992); *Joy v. Kaiser Aluminum & Chem. Corp.*, 62 Wn. App. 909, 911, 816 P.2d 90 (1991). The Holwegners base their argument on two theories. First, they apply RCW 37.12.010 to preclude the exercise of jurisdiction by the state. Second, the Holwegners assert that any exercise of jurisdiction by the state court here impermissibly infringed on the inherent sovereignty of the Yakama Tribe.

*RCW 37.12.010.* Prior to 1953, all power to adjudicate both civil and criminal matters affecting Indians on reservations was exclusively with Congress and the tribes themselves. *Confederated Tribes v. Washington*, 938 F.2d 146, 147 (9th Cir. 1991). In 1953, Congress enacted Public Law 280 which, with some exceptions, gave five states criminal jurisdiction over Indian lands and authorized Washington and other states to assume full civil and criminal juris-

diction over certain Indian tribes and lands by statute
and/or amendment of their state constitutions. *State v.
Cooper,* 130 Wn.2d 770, 773, 928 P.2d 406 (1996). RCW
37.12.010 was amended in response to this legislative grant
of authority. RCW 37.12.010 reads as follows:

> The state of Washington hereby obligates and binds itself to
> assume criminal and civil jurisdiction *over Indians and Indian
> territory,* reservations, country, and lands within this state in
> accordance with the consent of the United States given by the
> act of August 15, 1953 (Public Law 280, 83rd Congress, 1st
> Session), but such assumption of jurisdiction *shall not apply to
> Indians when on their tribal lands or allotted lands* within an
> established Indian reservation and held in trust by the United
> States or subject to a restriction against alienation imposed by
> the United States, unless the provisions of RCW 37.12.021
> have been invoked, except for the following:
>
> . . . .
>
> (8) Operation of motor vehicles upon the public streets, al-
> leys, roads and highways[.]

(Emphasis added.)

Although Washington was authorized to assume full civil
and criminal jurisdiction, with its adoption of RCW
37.12.010, Washington elected to assume only partial
subject matter and geographic jurisdiction over Indian
reservations within the state. In effect, Washington as-
sumed full civil and criminal jurisdiction over all Indian
lands in the eight subject areas set forth in the statute.
*Cooper,* 130 Wn.2d at 775. Full jurisdiction was thus
extended to all fee lands within Indian reservations and
over all Indian lands outside established Indian reserva-
tions. *Id.* at 775-76. "Allotted or trust lands are not
excluded from full nonconsensual jurisdiction unless they
are 'within an established Indian reservation.' " *Id.* at 776
(quoting RCW 37.12.010).

The first question is whether the exception pertaining to
the operation of motor vehicles is applicable here. Citing
*McCrea v. Denison,* 76 Wn. App. 395, 885 P.2d 856 (1994),

the Cordovas suggest that Washington has assumed full jurisdiction over all incidents on reservations that involve the operation of motor vehicles. RCW 37.12.010(8) provides that Washington assumed full jurisdiction for the "[o]peration of motor vehicles upon the *public* streets, alleys, roads and highways." (Emphasis added.) Because the parties agree that this incident did not occur on a public road, RCW 37.12.010(8) does not confer exclusive jurisdiction in the state court. In *McCrea*, the automobile accident in question occurred on a public highway running through a reservation.

The Holwegners make a different argument under RCW 37.12.010. They point out that under RCW 37.12.010, the state did not assume jurisdiction over "Indians" when they are "on their tribal or allotted lands." Insisting the term "Indians" must be read to include tribal corporations, the Holwegners contend the statute prevents the exercise of jurisdiction by the state court over a tribal corporation operating exclusively on reservation land. The Holwegners further contend that because Mr. Holwegner was acting as an agent for the tribal corporation, RCW 37.12.010 precludes the exercise of jurisdiction by the state court even though Mr. Holwegner is a nonmember. According to the Holwegners, the state court lacked subject matter jurisdiction because this action was brought against an Indian corporation for acts that occurred on the closed area of the reservation. In effect, the Holwegners argue that the state court lacked subject matter jurisdiction given the geographic location of the accident and Mr. Holwegner's role as an agent for a tribal corporation.

■ Because we have concluded that the tribal corporation is not a necessary party to this action, we need not address the Holwegners' argument that the term "Indian" must be read to include tribal corporations. We also reject the Holwegners' underlying assumption that jurisdiction rests exclusively in the tribal court unless it can be shown that the state specifically assumed jurisdiction under RCW 37.12.010. While the provisions of RCW 37.12.010 must be

carefully scrutinized before a state court may assume jurisdiction over a tribal member, the statute's failure to discuss jurisdiction over nonmembers does not in any way disrupt the state's power to exercise jurisdiction over its residents who are nonmembers. Given the location of the accident and the identity of the parties, we find nothing in RCW 37.12.010 that precludes this action from being litigated in the county where the defendant resided. RCW 4.12.025(1).

■ Inherent Sovereignty. Our examination of the applicability of RCW 37.12.010 addresses only the first part of our inquiry here. Public Law 280 is not a divestiture statute and nothing in the text of Public Law 280 addresses the removal of tribal authority or precludes the possibility of concurrent jurisdiction. *State v. Schmuck*, 121 Wn.2d 373, 394-95, 850 P.2d 1332 (1993). With this important distinction in mind, we must decide whether the doctrine of inherent sovereignty applies to grant the tribal court either exclusive or concurrent jurisdiction over this personal injury litigation. If we conclude that the tribe has concurrent jurisdiction, the matter must be remanded to the trial court for an analysis under CR 82.5(b).

■ ■ It is well established that the state may exercise civil jurisdiction over nonmembers on Indian reservations in matters not affecting members or tribes. *Thomsen v. King County*, 39 Wn. App. 505, 512, 694 P.2d 40, *review denied*, 103 Wn.2d 1030 (1985). "Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Williams v. Lee*, 358 U.S. 217, 220, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959). While tribes possess attributes of sovereignty over members and nonmembers, the "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation." *Montana v. United States*, 450 U.S. 544, 564, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981). Tribes retain only that sovereignty

necessary "to control the tribe's internal relations and to preserve their own unique customs and social order." *Schmuck*, 121 Wn.2d at 381 (citing *Duro v. Reina*, 495 U.S. 676, 685-86, 110 S. Ct. 2053, 109 L. Ed. 2d 693 (1990)).

■ The general rule is that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana*, 450 U.S. at 565. In the absence of express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances. *Strate v. A-1 Contractors*, 520 U.S. 438, 117 S. Ct. 1404, 1409, 137 L. Ed. 2d 661 (1997).

The *Montana* court considered the extent of tribal regulatory jurisdiction over fee reservation land, and established two exceptions to the general rule that tribal jurisdiction does not extend to the activities of nonmembers. Tribal jurisdiction over the conduct of nonmembers on fee land within the reservation is limited to (1) activities of nonmembers who enter consensual commercial relationships with tribe members, or (2) nonmember conduct that threatens or affects the "political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566. Subsequently, the *Strate* court determined that the *Montana* analysis should be applied to determine the extent of tribal adjudicative jurisdiction over reservation land that the court determined to be analogous to fee land. Significantly, the *Strate* court concluded that "[a]s to nonmembers . . . a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction." *Strate*, 520 U.S. at 453.

The Holwegners contend that even if jurisdiction is proper in state court, any exercise of jurisdiction is improper because it will infringe on the tribe's inherent sovereignty. Relying on *Williams*, the Holwegners contend the state court should have abstained from exercising authority over this matter because the assumption of jurisdiction here infringes upon the tribe's right of self-government. According to the Holwegners, the exercise of

jurisdiction by the state court infringed upon the tribe's right of self-government by applying state tort law when all logging activities on closed portions of the reservation were subject to tribal and federal management.

While the Holwegners urge us to apply the infringement test and conclude, as they have, that the exercise of jurisdiction by the state court impermissibly infringes on tribal self-government, the Cordovas ask us to apply the infringement test to reach the opposite conclusion. Alternatively, the Cordovas ask us to apply the *Montana* general rule and grant exclusive jurisdiction to the state court because the Holwegners have failed to demonstrate that either of the two *Montana* exceptions operates to confer jurisdiction in tribal court. The Cordovas contend the tribe has no inherent sovereign power to exercise jurisdiction over this simple tort action between nonmembers.

The infringement test and the *Montana* analysis examine the limits of tribal inherent sovereignty from different perspectives, the former by examining the extent of state jurisdiction and the latter by examining the extent of tribal jurisdiction. In some respects, the infringement test and the *Montana* analysis are merely different formulations of the same underlying concept. The overlap of these different applications was recognized by the *Strate* court when it noted that *Williams* was one of the cases falling within the first exception of the *Montana* analysis. *Strate*, 520 U.S. at 457. Because the parties in this litigation are nonmembers who are otherwise subject to the state's jurisdiction, our inquiry must focus on whether the tribe has the inherent sovereign power to exercise exclusive or concurrent jurisdiction over this litigation. For this reason, we seek our guidance from cases such as *Montana* and *Strate* that specifically address the extent of tribal jurisdiction over nonmembers.

We conclude therefore that we must conduct our analysis here under the formulation established in *Montana*, which is acknowledged to be the "pathmarking case concerning tribal civil authority over nonmembers." *Strate*, 520 U.S. at

445. Having reached this conclusion, we recognize that *Montana* and *Strate* were decided in part on geographic considerations that do not apply here. While geographic considerations were determinative in *Montana* and *Strate*, the Ninth Circuit recently applied the *Montana* analysis to determine the scope of a tribe's adjudicatory authority based on tribal consent. *Lewis County v. Allen*, 163 F.3d 509, 513 (9th Cir. 1998). When all is considered, we conclude that the geographic considerations in both *Montana* and *Strate* do not preclude the use of the *Montana* analysis to determine the extent of tribal jurisdiction over tort litigation between nonmembers arising from incidents occurring on closed reservation land.

The general rule, as stated in *Montana*, is that the inherent sovereign powers of a tribe do not extend to the activities of nonmembers. *Montana*, 450 U.S. at 565. Consequently, the party seeking to establish exclusive or concurrent jurisdiction in tribal court based on the principle of inherent sovereignty must present evidence demonstrating that one of the two *Montana* exceptions apply to confer jurisdiction in the tribal court. Based on the record here, we conclude that the *Montana* rule, rather than its exceptions, applies and that jurisdiction rests exclusively in the state court rather than the tribal court.

■ Describing the first exception, the *Montana* court stated that a "tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565. While Mr. Cordova was employed by a tribal corporation, there is no indication that by consenting to this relationship Mr. Cordova consented to any regulation other than that related directly to his employment. Although the Holwegners contend the tribe has some legislative authority over logging activities on the reservation, they fail to provide evidence demonstrating that the Yakama Tribe has exercised this legislative authority or how this tribal regulation re-

lated to logging would impact this tort litigation between nonmembers.

Application of the second *Montana* exception requires an examination as to whether the nonmember conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566. The *Strate* court concluded that this exception must be narrowly construed or "the exception would severely shrink the rule." *Strate*, 520 U.S. at 458. We find no evidence in the record indicating that the second *Montana* exception applies to confer jurisdiction in the tribal court.

We recognize and respect the right of the Yakama Tribe to govern itself and regulate the activities of its members. Nevertheless, we find nothing in the record indicating that the tribe has exclusive or concurrent jurisdiction over this garden-variety tort litigation between nonmembers that arose from an incident occurring on the closed area of the reservation. Because we find no grant or reservation of jurisdiction to the tribal court, we need not remand this matter to the trial court for a determination under CR 82.5(b).

The judgment of the trial court is affirmed.

SWEENEY and KATO, JJ., concur.